James R. Vaillancourt, Admr. of the Estate of Baby Girl Vaillancourt, Sandra M. Vaillancourt, and James R. Vaillancourt, Individually v. Medical Center Hospital of Vermont, Inc., and John D. Lewis

[425 A.2d 92]

No. 4-80

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 5, 1980

*Leslie S. Linton* of *Sylvester & Maley, Burlington,* for Plaintiffs.

*Spencer R. Knapp* of *Dinse, Allen & Erdmann,* Burlington, for Medical Center Hospital.

*Pierson, Affolter & Wadhams,* Burlington, for Lewis.

Larrow, J. This is an interlocutory appeal, with three certified questions, resulting from denial by the trial court of motions filed by the defendants to dismiss the complaint for failure to state a cause of action. V.R.C.P. 12(b)(6). The facts alleged in the complaint, which must be assumed for the purposes of this appeal, may be summarized as follows. The defendant Medical Center Hospital of Vermont, Inc. (Hospital), conducts a general hospital in Burlington. The defendant John D. Lewis is a doctor of medicine, specializing in obstetrics. Plaintiffs are husband and wife, who had engaged the services

of Dr. Lewis. In the evening of August 13, 1977, Mrs. Vaillancourt was admitted to the hospital with a diagnosis of pregnancy and active, early labor. She was an "increased labor risk" because she was about 19 days past her estimated date of confinement. Mr. Vaillancourt, who had attended child birth classes, accompanied his wife to the hospital, and was with her during the entire period of labor and delivery, giving her assistance. The hospital failed to provide adequate monitoring of the fetus, and none at all for a period of 3½ hours, abandoning Mrs. Vaillancourt, as is alleged, without medical care and attention. At the end of this period, the fetus had died, an event the defendants could have prevented.

Dr. Lewis is claimed to have been negligent in failing to advise the hospital of Mrs. Vaillancourt's "high risk status" and other data, in failing to administer appropriate tests, and in failing to supervise and instruct hospital personnel.

The plaintiffs seek relief for:

1. Wrongful death of the fetus under 14 V.S.A. §§ 1491, 1492, by action of Mr. Vaillancourt as administrator. A similar recovery for the parents is claimed under common law.
2. Personal injury to Mrs. Vaillancourt, her pain and suffering and her emotional distress.
3. Mr. Vaillancourt's expenses for his wife's care and for loss of consortium. He also seeks to recover for his own emotional distress and substantial physical injuries resulting therefrom.

Although the defendants' motions to dismiss were addressed to the complaint as a whole, they conceded upon hearing, and upon argument here, that Mrs. Vaillancourt's claims for her own personal injuries, and her husband's claim for medical expenses and loss of consortium, were sufficiently pleaded to survive dismissal. These issues are therefore not before us.

Presented for our review, however, are the three issues certified by the trial court. Carefully worded, they may be summarized as follows: (a) the existence of a right of recovery for negligently caused wrongful death of a full term, unborn, viable child, either at common law or under 14 V.S.A. §§ 1491, 1492; (b) the existence of a right of recovery for emotional distress resulting in substantial bodily injury to husband and

wife present at the scene of the fetus' claimed wrongful death, and (c) the existence of a right of recovery for a husband's emotional distress associated with fear for his wife's life, with accompanying physical injury to the husband, occasioned by his presence at the scene of the fetus' death. We consider these issues in that order.

■■ With respect to the first question outlined, the trial court did not reach the issue of whether recovery for the wrongful death involved here has a basis in common law. It based its ruling that recovery is permitted upon its interpretation of our wrongful death statute, 14 V.S.A. §§ 1491, 1492. Neither do we consider determination of that particular point requisite to decision. We note the conflict of authority upon the question. Cf. Annotation, "Modern Status of Rule Denying a Common-Law Recovery for Wrongful Death," 61 A.L.R.3d 906 (1975). But we base our decision allowing recovery upon interpretation of the wrongful death statute. In our view the statute is remedial in nature, designed to alleviate the harsh common law rule of no liability because the person injured had died. As such, it must be given liberal construction. In re Dexter, 93 Vt. 304, 312, 107 A. 134, 137 (1919). Whether or not in "derogation" of the common law, a question perhaps open to debate, the statute is clearly designed to remedy an inequity in the common law, and to fill a void repugnant to general equitable principles.

So construed, the presence of liability under our wrongful death act becomes a compelled conclusion. The statutory remedy is for the death of a "person." For the reasons hereinafter discussed, we hold a viable fetus, though later stillborn, to be within the meaning of that term.

Rights of an unborn child are no stranger to our law, even though the precise question presented is one of first impression and we are without statutory history helpful to decision. The intestate rights of a posthumous child are recognized in 14 V.S.A. § 555. The period of gestation is recognized as a component of the rule against perpetuities. 27 V.S.A. § 501; In re Peck's Estate, 96 Vt. 183, 186, 118 A. 527, 528 (1922). 18 V.S.A. § 5231(b), the definition section of the Uniform Anatomical Gift Act, describes "decedent" as including a stillborn infant or fetus. And 18 V.S.A. § 5201, referring to "a

dead body of a person," was construed, prior to additional legislation (18 V.S.A. § 5201 et seq.), to include the body of a fetus. 1956 Op. Atty. Gen. 158.

There is an undeniable split of authority upon the proper interpretation of the word "person" in a wrongful death statute. Extensive enumeration of the holdings in other jurisdictions would serve no useful purpose; they are collected and discussed in Annotation, 84 A.L.R.3d 411 (1978). There some twenty-five jurisdictions are listed as allowing recovery, with twelve opposed. The trend of authority seems to allow recovery. 1 S. Speiser, Recovery for Wrongful Death, 564 (2d ed. 1975). All but two of the states allowing recovery use viability, that point in time when the fetus is capable of independent life or survival when separated from its mother, as the line of demarcation. Annotation, 84 A.L.R.3d 453 (1978). The fetus here involved is alleged to have been, and must therefore be assumed to have been, viable.

Numerous reasons have been assigned by the several jurisdictions for reaching the conclusion to which we subscribe. The ones commonly given, and in our view convincing, are summarized in *White* v. *Yup*, 85 Nev. 527, 536, 458 P.2d 617, 622 (1969), as follows:

A. If a child, injured when a viable fetus as a result of another's negligence, has a cause of action when born, then it can make no difference in liability whether death occurs just prior to or just after birth.

B. A viable unborn child is, in fact, biologically speaking, a presently existing person and a living human being, because it has reached such a state of development that it can presently live outside the female body, as well as within it.

C. If no right of action is allowed, there is a wrong inflicted for which there is no remedy. Where negligent acts produce a stillbirth and a right of action is denied, an incongruous result is produced. For example, if a doctor acted negligently while delivering a baby and it died, the doctor would be immune from lawsuit. However, if he badly injured the child, the doctor would be exposed to liability. Under such a rule, there is the absurd result that the greater the harm, the better the chance of im-

munity, and the tort-feasor could foreclose his own liability. (Citations omitted in each instance.)

In sum, we hold that there exists statutory wrongful death liability for the negligently caused death of an unborn, viable fetus. The first certified question is answered in the affirmative.

The second certified question deals with recovery by the husband and wife plaintiffs for emotional distress. Both were present at the scene of the events described, and allege that they suffered such distress, with resultant substantial bodily injury, from witnessing the events which transpired, *i.e.*, the neglect resulting in the fetal death. We consider this issue to be governed by our decisions in *Savard* v. *Cody Chevrolet, Inc.,* 126 Vt. 405, 234 A.2d 656 (1967), and *Guilmette* v. *Alexander,* 128 Vt. 116, 259 A.2d 12 (1969). Those cases may be summarized as allowing recovery for negligently caused emotional distress, not accompanied by physical impact, only when accompanied by substantial bodily injury or sickness, and subject to the limitation that the plaintiff himself have been within the "zone of danger" and subject to a reasonable fear of immediate personal injury. The reasons for this rule are clearly stated in the cases quoted, and we see no compelling reasons to modify the views therein adopted.

■■ Applied to the case at bar, the results are apparent. The negligence causing the fetal death is nowhere alleged to have threatened the personal safety of the husband, and his recovery on this account is precluded. Similar arguments, however, do not apply to the plaintiff wife. With the fetus as yet then unborn, she was necessarily within the zone of danger and subject to a reasonable fear for her own safety. Her recovery is not precluded, the allegation being that she did in fact suffer not only substantial resulting injury, but also direct personal injury to herself from the claimed negligence. The second certified question must be answered in the negative as to the plaintiff husband, and in the affirmative as to the plaintiff wife.

■ The third question deals with emotional distress occasioned the husband by fear for his wife's life. This is also alleged to have resulted in substantial physical injury, thus

meeting one of the outlined tests. But there is no allegation bringing the claim within the "zone of danger" requirement, or even by implication alleging any reasonable fear for the husband's own safety. Recovery for this element of damage is therefore precluded; the third question must be answered in the negative.

We note, as did the trial court, that in *Sheltra* v. *Smith*, 136 Vt. 472, 392 A.2d 431 (1978), we recognized the tort of extreme and outrageous conduct intentionally or recklessly causing severe emotional distress to another. While the complaint here in question alleges recklessness, we do not view it as characterizing the acts of the defendants as "extreme and outrageous." In the interests of justice, however, should the plaintiff husband desire, by amendment, to bring his complaint within the scope of *Sheltra* v. *Smith*, either before trial, V.R.C.P. 15(a), or during trial to conform to the evidence adduced, V.R.C.P. 15(b), such amendment should be liberally allowed. As the pleading is presently framed, the third certified question must be answered in the negative.

Our disposition of the certified questions and the issues which they present is in effect a holding that some of the claims alleged in plaintiffs' complaint are issues appropriate for trial, while some are not. In effect, we hold that the trial court should have granted defendants' motions to dismiss in part, rather than denying them in toto. With the possibility of amendment which we have discussed, it would appear that a more appropriate result would be the entry, at the trial level, of a pretrial order under V.R.C.P. 16, limiting the scope of the evidence to be introduced and the issues to be tried. We will accordingly remand for that purpose.

*The order denying defendants' motions to dismiss is vacated, and the cause remanded for entry of a pretrial order in accordance with the views herein expressed. Each party shall bear its own costs in this Court.*