571 A.2d 433

**Karen COVELESKI, Administrator Ad Prosequendum of the Estate of Baby Coveleski, Deceased, and in her own right, as mother and natural guardian of Baby Coveleski, Deceased, Appellant,**

v.

**Vincent A. BUBNIS, Jr., Zerbe Township, Raymond L. Bowers, Sr., t/d/b/a Corner Tavern, and Consolidated Rail Corporation, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 2, 1989.

Filed March 9, 1990.

John T. Robinson, Selinsgrove, for appellant.

Charles H. Saylor, Sunbury, for Zerbe Township, appellee.

David B. Marateck, Shamokin, for Bowers, appellee.

Geoffrey S. Shuff, Harrisburg, for Consol. Rail Corp., appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

WIEAND, Judge.

The issue presented in this appeal is whether the Wrongful Death and Survival Statutes, 42 Pa.C.S. §§ 8301 and 8302, provide a cause of action on behalf of an eight week old fetus after an abortion has been induced to avoid the risk of fetal damage because of injuries sustained by the mother in a motor vehicle accident and/or her subsequent medical treatment. We hold that there is no cause of action on behalf of a non-viable fetus. Therefore, we affirm the order of the trial court which granted defendants' preliminary objections in the nature of a demurrer and dismissed the complaint on behalf of the fetus.

On January 3, 1986, Karen Coveleski suffered physical injuries, including a dislocated right hip, when the Jeep CJ–7 in which she was riding as a passenger plunged into a ravine on the property of Consolidated Rail Corporation (Conrail) in Zerbe Township, Northumberland County. Six days later, upon the advice of her physician, Ms. Coveleski consented to abort a fetus of approximately eight weeks gestation because of the risk that the fetus had sustained damage as a result of the accident or would be damaged by subsequent medical treatment.

Ms. Coveleski then brought actions against Vincent A. Bubnis, Jr., the driver of the Jeep; Zerbe Township; Conrail; and Raymond Bowers, Sr. t/d/b/a The Corner Tavern, which had served alcohol to the driver of the jeep prior to the accident. Coveleski not only sought recovery for her personal injuries, but she also asserted wrongful death and survival actions on behalf of the fetus. Bubnis, the driver, agreed to settle Ms. Coveleski's claims. The remaining defendants filed preliminary objections in the nature of a demurrer to the claim on behalf of the fetus, asserting that the demise of an eight week old fetus did not give rise to wrongful death and survival actions.

A cause of action exists under the Pennsylvania Survival Statute only if it is determined that the fetus could have been a plaintiff.[1] The Wrongful Death Act provides that an action may be brought to recover for the death of an "individual."[2] The legislature defines "individual", at 1 Pa.C.S. § 1991, as a "natural person." This is distinguished from the broader term "person", which includes corporations, partnerships and associations. Legal status as a

1. 42 Pa.C.S. § 8302 provides as follows:
   All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

2. 42 Pa.C.S. § 8301(a) provides as follows:
   (a) General rule.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no action for damages was brought by the injured individual during his lifetime.

natural person is not determined solely by the humanity of the entity in question; it is a legal concept regarding the assignment of rights and duties. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ("person" as used in the Fourteenth Amendment does not include the unborn).

Until recent times, the Supreme Court in Pennsylvania had required a live birth before the accrual of a cause of action for in utero injury. See: *Scott v. Kopp,* 494 Pa. 487, 431 A.2d 959 (1981); *Marko v. Philadelphia Transportation Co.,* 420 Pa. 124, 216 A.2d 502 (1966); *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9 (1964). In other jurisdictions, however, judicial recognition was given to the individuality of a fetus because of medical information regarding the separate nature of the aspects of maternal and fetal physiology.[3] The existence of a unique fetal physiology, how-

---

**3.** Thirty-two jurisdictions recognize a cause of action on behalf of a fetus that sustains fatal injury in utero.

*Eich v. Town of Gulf Shores,* 293 Ala. 95, 300 So.2d 354 (1974); *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985); *Hatala v. Markiewicz,* 26 Conn.Supp. 358, 224 A.2d 406 (1966); *Worgan v. Greggo and Ferrara, Inc.,* 50 Del. 258, 128 A.2d 557 (1956); *Simmons v. Howard University,* 323 F.Supp. 529 (D.D.C. 1971); *Porter v. Lassiter,* 91 Ga.App. 712, 87 S.E.2d 100 (1955); *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11 (1982); *Chrisafogeorgis v. Brandenberg,* 55 Ill.2d 368, 304 N.E.2d 88 (1973); *Britt v. Sears,* 150 Ind.App. 487, 277 N.E.2d 20 (1972); *Hale v. Manion,* 189 Kan. 143, 368 P.2d 1 (1962); *Mitchell v. Couch,* 285 S.W.2d 901 (Ky.1955); *Odham v. Sherman,* 234 Md. 179, 198 A.2d 71 (1964); *Mone v. Greyhound Lines, Inc.,* 368 Mass. 354, 331 N.E.2d 916 (1975); *O'Neill v. Morse,* 385 Mich. 130, 188 N.W.2d 785 (1971); *Pehrson v. Kistner,* 301 Minn. 299, 222 N.W.2d 334 (1974); *Terrell v. Rankin,* 511 So.2d 126 (Miss.1987); *O'Grady v. Brown,* 654 S.W.2d 904 (Mo.1983); *White v. Yup,* 85 Nev. 527, 458 P.2d 617 (1969); *Poliquin v. Mac-Donald,* 101 N.H. 104, 135 A.2d 249 (1957); *Salazar v. St. Vincent Hospital,* 95 N.M. 150, 619 P.2d 826 (1980); *DiDonato v. Wortman,* 320 N.C. 423, 358 S.E.2d 489 (1987); *Hopkins v. McBane,* 427 N.W.2d 85 (N.D.1988); *Stidam v. Ashmore,* 109 Ohio App. 431, 167 N.E.2d 106 (1959); *Evans v. Olson,* 550 P.2d 924 (Okl.1976); *Libbee v. Permanente Clinic,* 268 Or. 258, 518 P.2d 636 (1974); *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (1976); *Fowler v. Woodward,* 244 S.C. 608, 138 S.E.2d 42 (1964); *Farley v. Mount Marty Hospital Association, Inc.,* 387 N.W.2d 42 (S.D.1986); *Vaillancourt v. Medical Center Hospital of Vermont, Inc.,* 139 Vt. 138, 425 A.2d 92 (1980); *Moen v. Hanson,* 85 Wash.2d 597, 537 P.2d 266 (1975); *Baldwin v. Butcher,* 155 W.Va. 431, 184 S.E.2d 428 (1971);

ever, does not alone resolve the legal question of whether to afford to a fetus the legal status necessary to assert a cause of action.

In *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985), the Pennsylvania Supreme Court overruled prior case law and joined a majority of American jurisdictions in recognizing a cause of action on behalf of a fetus of 42 to 43 weeks gestation which had been delivered stillborn. Having eliminated birth as the moment at which a cause of action accrued, the *Amadio* court suggested viability as the moment in time when a fetus attains the status of an individual for purposes of maintaining an action for his or her death. The Court said: " ... we conclude that the time has arrived for us to join [the majority of our] sister states and the District of Columbia and recognize that survival and wrongful death actions lie by the estates of stillborn children for fatal injuries they received while viable children en ventre sa mere." *Id.,* 509 Pa. at 203, 501 A.2d at 1086–1087.

Viability is that "stage of prenatal development at which the fetus would be capable of independent existence if removed from its mother's womb, and it has often been noted that a fetus ordinarily becomes viable during the sixth or seventh month of its mother's pregnancy." Annot., Right to Maintain Action or to Recover Damages for Death of Unborn Child, 84 A.L.R.3d 411, 432 n. 72 (1978). In support of its decision to allow a separate cause of action on behalf of a viable fetus, the *Amadio* court recognized that difficulties of proof are not necessarily greater where fetal death occurs shortly before birth than where death occurs shortly after birth. However, even those advocating a cause of action from the moment of conception must acknowledge that problems of proof become more difficult with lesser periods of gestation. *Scott v. Kopp, supra* 494 Pa. at 496, 431 A.2d at 964 (Dissenting Opinion by Larsen, J.). Where the wrongful death and survival statutes are not explicit regarding the rights of an unborn child, it is

*Kwaterski v. State Farm Mutual Auto Insurance Company,* 34 Wis.2d 14, 148 N.W.2d 107 (1967).

sound statutory interpretation to limit the right to assert such an action to a viable fetus. Before viability, any determination of damages for death of the fetus would be entirely speculative. Whether the child would be born healthy and talented would be incapable of prediction with reasonable certainty. It is in recognition of this difficulty in proof, that a majority of jurisdictions draw the line at viability. Indeed, only Georgia and Rhode Island hold otherwise. The majority view, we conclude, is the better view.

This is also the view followed by the Superior Court in *Hudak v. Georgy*, 390 Pa.Super. 14, 567 A.2d 1095 (1989). In the absence of an expression of contrary intent by the legislature, the Court reasoned, it would not accord to fetuses prior to viability the same rights accorded by the Wrongful Death and Survival Acts to children who have attained viability. Our review of the statutes is in accord. The language thereof does not suggest a legislative intent to create separate causes of action in favor of non-viable fetuses.

In the instant case, Coveleski's pregnancy was only in its eighth week when the fetus was aborted. At such an early stage of her pregnancy, plaintiff could not allege that the fetus was viable. Therefore, the wrongful death and survival actions were properly dismissed by the trial court.

Affirmed.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting.

In *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985), our Supreme Court abandoned the live birth requirement of prior precedent and granted a cause of action on behalf of a stillborn fetus. Although the fetus in *Amadio* was alleged to have been viable at the time of its injuries, the Court did not establish viability as the moment in time when a fetus attains the status of an individual for purposes of maintaining an action for his or her death. To the extent the majority holds otherwise, I respectfully dissent.

The specific question addressed by the Court in *Amadio* was "whether a right of recovery exists under our Wrongful Death Act and Survival Statute on behalf of a stillborn child who died as a result of injuries received en ventre sa mere." 509 Pa. at 201, 501 A.2d at 1085. Viability was never at issue in the case as the stillborn plaintiff was alleged to have been viable at the time of its death.[1] Rather, the thrust of *Amadio* was directed towards the abandonment of prior caselaw mandating the live birth of a child before an action could be brought for its death. This was accomplished in large part by the Court's utilization of the rationale and holding of *Sinkler v. Kneale,* 401 Pa. 267, 164 A.2d 93 (1960). As the Court stated:

> We have, since our decision in [*Sinkler*], recognized that a child en ventre sa mere is a separate individual from the moment of conception, and have permitted that child to sue for injuries received during gestation when the child is born alive. Implicit in our holding in *Sinkler* is the acknowledgement that a child en ventre sa mere is an individual with the right to be free of prenatal injury. If a child en ventre sa mere is an individual at the time of its injury, then, *a fortiori,* the child is also an individual when those injuries cause its death, and it makes no difference in liability under the wrongful death and survival statutes whether the child dies of the injuries just prior to or just after birth.
>
> In short, the "live birth" or "still birth" of a child will no longer be determinative of that child's status as an individual under our survival or wrongful death statutes. To be consistent with *Sinkler* and the body of medical knowledge underpinning it, we acknowledge a child en ventre sa mere to be an "individual," "having existence as a separate creature from the moment of conception." *Sinkler,* 401 Pa. at 273, 164 A.2d at 96. Henceforth,

---

1. Justice Zappala, who drafted an extensive concurring opinion, recognized this fact and specifically reserved decision on the viability requirement. *Amadio v. Levin,* 509 Pa. at 230 fn. 7, 501 A.2d at 1101 fn. 7. *See also Hudak v. Georgy,* 390 Pa.Super. 14, 567 A.2d 1095 (1989) (*Amadio* decision does not decide the issue of non-viable plaintiffs).

injuries received by a child while en ventre sa mere can form the basis for survival or wrongful death actions as maintained on behalf of a child born alive. Live birth can no longer be a limiting prerequisite to the maintenance of such an action. This is consistent with Mr. Justice Larsen's dissent in *Scott v. Kopp*, [494 Pa. 487, 431 A.2d 959 (1981)], where he argues against drawing a line at the birth of a child, its viability, or some other arbitrary period of gestation, and instead concludes that the action should proceed to trial and let the orderly production of evidence by the adversaries prove or disprove causation, injury and damages in each case.

*Amadio v. Levin*, 509 Pa. at 204–05, 501 A.2d at 1087.

Appellees, and apparently the majority, dismiss this passage as mere dicta and would find *Sinkler* inapplicable to the present situation. Appellees reason that the child in *Sinkler*, though injured in the womb during its first month of gestation, survived and was born alive rendering the case of no moment here. I must disagree. First, a proper reading of *Amadio* indicates that the use of *Sinkler* was for more than purposes of persuasion; the Court expanded the holding and rationale of *Sinkler* to encompass those situations where an injured fetus dies prior to birth. Second, the fact of live birth in *Sinkler* does not render the case inapplicable here where the Court in *Amadio* clearly found this distinction no longer determinative of a child's rights under our wrongful death and survival statutes.[2]

The majority in the case at bar would limit a wrongful death or survival action brought on behalf of a fetus to those situations where viability is alleged. In support of this requirement, the majority lists as its reasons the problems of proof and a lack of legislative intent. Regarding

2. In his concurring opinion, Justice Zappala emphasized this position. He stated:

... I conclude that the cause of action for prenatal injuries identified in *Sinkler v. Kneale* accrues to the child upon the occurrence of the injuries without regard to the later live birth of the child and, pursuant to the Survival Act, survives the death of the child whether the death occurs before or after birth.

*Amadio v. Levin*, 509 Pa. at 221, 501 A.2d at 1096.

intent, the majority cites our recent decision in *Hudak v. Georgy*, 390 Pa.Super. 14, 567 A.2d 1095 (1989). In that case, a panel of this Court, by per curiam opinion with Judge Johnson concurring, denied a cause of action on behalf of three non-viable fetuses. The majority reasoned that because the Wrongful Death Act and Survival Statute made no mention of non-viable fetuses, the issue was better left to the legislature. A similar argument was rejected after an extensive discussion by Justice Zappala in his concurring opinion in *Amadio* where he concluded that it was proper for the Court to interpret these statutes to include a viable still-born fetus. *Amadio v. Levin*, 509 Pa. at 222–30, 501 A.2d at 1097–1101 (Zappala, J., concurring). I find such a rationale appropriate and applicable to the facts presented herein.

Moreover, I do not find an alleged difficulty in proving one's case reason enough to preclude an otherwise valid cause of action, nor do I find support in the rationale of *Amadio* for this result. Instead, following the natural progression of *Sinkler* and *Amadio*, I would allow the parents of the deceased plaintiff the opportunity to prove their case regardless of arbitrary gestation requirements. In so doing, I find the reasoning of Mr. Justice Larsen persuasive:

> The alternative of drawing an arbitrary line anywhere is to recognize the cause of action generally while, of course, maintaining the not-insubstantial burden of proving causation in each case. Modern medical science has advanced to such a state that many of the heretofore existent causation gaps can now be closed. That such gaps might remain open in some cases should preclude recovery *in those cases* for failure to meet the burden of proof of causation, but should not invalidate those causes of action for which expert medical testimony can bridge the gap. Thus, rather than drawing a line at the birth of a child, viability or some arbitrary period of gestation, I would simply allow the action to proceed to trial and let

the orderly production of evidence by the adversaries draw its own line.

*Scott v. Kopp,* 494 Pa. at 496, 431 A.2d at 964 (Dissenting Opinion of Larsen, J.) (emphasis in original).

For the foregoing reasons, I would reverse the order of the trial court and remand for proceedings consistent with this opinion.