Gemma AKL and Antoine Akl, h/w,

v.

Howard M. LISTWA, D.O., Valley OB–GYN Associates, Ltd., Larry R. Glazerman, M.D., and Stephen K. Klasko, M.D.

Civ. A. No. 89–7313.

United States District Court, E.D. Pennsylvania.

July 2, 1990.

John P. Karoly, Jr., Karoly Law Offices, Allentown, Pa., for plaintiffs.

Daniel F. Ryan, III, Plymouth Meeting, Pa., for Howard M. Listwa, D.O., Valley OB–GYN Assoc., Glazerman & Klasko.

## MEMORANDUM

CAHN, District Judge.

In this diversity suit, the plaintiffs allege that the defendants, by providing inadequate medical care which resulted in the death of a fetus carried by Gemma Akl, committed several common-law torts, including some actionable under the Pennsylvania Wrongful Death and Survival Acts, 42 Pa.Cons.Stat.Ann. §§ 8301–8302 (Purdon 1982 & Supp.1990). Gemma and Antoine Akl sue on their own behalf as well as on behalf of "Infant Akl," the miscarried fetus. The defendants have moved for partial summary judgment, on the ground that the Wrongful Death and Survival Acts do not provide causes of action for the death of non-viable fetuses. This court grants the defendants' motion.

## I. BACKGROUND

For the purposes of this motion, the allegations set forth, together with uncontradicted deposition matter, will be taken as true. Gemma and Antoine Akl, wife and husband, are residents of New York. Complaint, ¶ 1. The individual defendants practice collectively as Valley OB–GYN Associates, Ltd. ("Valley"), which is located in Pennsylvania. Complaint, ¶ 2. On October 5, 1987, Gemma Akl was examined at Valley by defendant Klasko, who told her that she was pregnant, that the fetus was properly positioned in the uterus, and that the uterus was healthy. Complaint, ¶ 6. On October 7, 1987, Gemma Akl began spotting blood; as a result, she returned to Valley, where, after an examination, defendant Listwa told her that she had miscar-

ried and that she should undergo a D & C.[1] Complaint, ¶ 7. She agreed; a prefatory suctioning of the uterus yielded no tissue. *Id.* The next day, she returned to Listwa's office; there an ultrasound examination showed the presence of a fetus. Complaint, ¶ 8. Listwa again recommended a D & C, but Akl refused. Complaint, ¶ 9. Another ultrasound examination, performed on October 9, showed the presence of a living fetus. Complaint, ¶ 10. On October 10, Akl began to hemorrhage from her vagina. Complaint, ¶ 11. She was rushed to the hospital, where she was diagnosed as miscarrying; a D & C was performed the next day. Complaint, ¶ 12. When the miscarriage occurred, Akl had been pregnant for approximately eight weeks. Motion for Summary Judgment, Exh. B.

Gemma Akl seeks damages for the pain, suffering, and emotional anguish she allegedly experienced as a result of the events set forth above, as well as from the stress placed upon her marriage. Complaint, ¶¶ 13–14. She also seeks damages for a loss of income stemming from her relocation, which she blames on the stress she underwent, and for the losses arising from hypertension allegedly induced by this episode. Complaint, ¶¶ 15–16.

Antoine Akl likewise seeks damages for the pain and suffering caused him by these alleged injuries to his wife, and for the stress placed upon his marriage. Complaint, ¶¶ 19–20. He also claims a loss of "the love, kindness, good will and satisfaction of bonding and nurturing that would normally generate in the family unit with the birth of Plaintiff INFANT AKL." Complaint, ¶ 21. In addition, he seeks recovery for the economic losses arising from his relocation, for the loss of "peace of mind and enjoyment normally associated with having additional children," and for a loss of consortium. Complaint, ¶¶ 22–23.

Finally, in Count III, "Infant Akl," the miscarried fetus, sues, through Gemma and Antoine Akl, for its wrongful death. Complaint, ¶ 26. This court has jurisdiction under 28 U.S.C. § 1332. Venue is proper in this district, because all the defendants reside here and because the claim arose here. 28 U.S.C. § 1391(a).

## II. DISCUSSION

The defendants seek partial summary judgment on Count III, the claim asserted by "Infant Akl," and for all claims arising from the Wrongful Death and Survival Acts, 42 Pa.Cons.Stat.Ann. §§ 8301–8302 (Purdon 1982 & Supp.1990).[2] They argue that "Infant Akl," an eight-week-old fetus, was not a person within the contemplation of these statutes, and thus that no action can lie on its behalf.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The court must construe all facts and inferences in the light most favorable to the non-moving party. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361–62 (3d Cir.1987). The evidence so construed, though, the movant will prevail if there are no genuinely disputed issues that could support a verdict for the non-moving party and that would prove essential to the claim. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury, faced with the evidence presented, could find for the party opposing the motion. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Lyons v. United States Marshals*, 840 F.2d 202, 204 (3d Cir.1988).

 Under this standard, the defendants are entitled to partial summary judgment. The undisputed facts show that the fetus was only eight weeks old when it was miscarried. Eight-week-old fetuses are not

---

**1.** A dilation of the cervix and curettage of the uterus, which would remove the dead fetal tissue.

**2.** Paragraphs 21 and 22 assert claims of this sort.

viable. *Webster v. Reproductive Health Servs.*, —— U.S. ——, 109 S.Ct. 3040, 3076 n. 9, 106 L.Ed.2d 410 (1989) (Blackmun, J., dissenting) (fetal viability no earlier than 23–24 weeks); *Hudak v. Georgy*, 390 Pa. Super. 14, 567 A.2d 1095, 1096 (1989). Turning to Pennsylvania law, the Survival Act allows causes of action only if the decedent could have been a plaintiff. 42 Pa.Cons.Stat.Ann. § 8302 (Purdon 1982 & Supp.1990); *see also, e.g., Coveleski v. Bubnis*, 571 A.2d 433 (Pa.Super.1990). In turn, the Wrongful Death Act, 42 Pa.Cons. Stat.Ann. § 8301 (Purdon 1982 & Supp. 1990), allows causes of action to be brought "for the death of an individual." "Individual" is defined as a "natural person." 1 Pa.Cons.Stat.Ann. § 1991 (Purdon 1990). The question then becomes whether a non-viable fetus is a natural person for the purposes of a wrongful death action.

Because this court sits in diversity, its task is to apply Pennsylvania substantive law to this dispute; thus, an authoritative holding of the Pennsylvania Supreme Court would settle this question. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *McGowan v. University of Scranton*, 759 F.2d 287, 290–91 (3d Cir.1985). The leading Pennsylvania Supreme Court opinion on wrongful death actions for fetuses is *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985); it is to that that this court's attention must now turn.

In *Amadio*, the Court extended its earlier holding that negligence claims could be brought by children who were injured *en ventre sa mere*. *Sinkler v. Kneale*, 401 Pa. 267, 273, 164 A.2d 93, 96 (1960). The Court held that "survival and wrongful death actions lie by the estates of stillborn children for fatal injuries they received while viable children en ventre sa mere." *Amadio*, 509 Pa. at 203, 501 A.2d at 1086–87. In so doing, the Court relied in part on its canvassing of other jurisdictions, the great majority of which allowed this cause of action. 509 Pa. at 203 n. 3, 501 A.2d at 1087 n. 3. The four-justice majority opinion went on to state that this cause of action would not draw a line "at the birth of a child, its viability, or some other arbi-

trary period of gestation ..." 509 Pa. at 205, 501 A.2d at 1087. Concurring, Justices Zappala and McDermott observed that, "[b]ecause the Complaint in this case asserts that [the plaintiff] was 'viable' at the time the allegedly negligent conduct of the defendants caused her death, the questions involved in circumstances implicating 'viability' in other ways must be left for another day." 509 Pa. at 230 n. 7, 501 A.2d at 1101 n. 7 (Zappala, J., concurring). The three dissenters would not have recognized a cause of action. *Amadio*, 509 Pa. at 237–38, 501 A.2d at 1105 (Hutchinson, J., dissenting); 509 Pa. at 237, 501 A.2d at 1104–05 (Flaherty, J., dissenting); 509 Pa. at 230–36, 501 A.2d at 1101–04 (Nix, C.J., dissenting).

This court's reading of *Amadio* leads it to conclude that whether there exists a cause of action for the wrongful death of a non-viable fetus remains unresolved. The explicit holding of *Amadio*, quoted above, refers to viable fetuses. While the majority opinion elsewhere states that no line is drawn at viability, this must be taken as mere dictum. As the concurrence points out, the fetus in *Amadio* was viable when the injuries were sustained. Moreover, two of the four justices in the *Amadio* majority expressly stated in a concurrence that the opinion of the court did not resolve whether a cause of action could arise for injuries before viability. Even the most liberal reading of *Amadio* thus produces at most two justices who might have held that a cause of action would arise for injuries resulting in the death of a non-viable fetus. There is thus no controlling precedent here.

■ As a result, it is left to this court to predict how the Pennsylvania Supreme Court would decide this issue. *See, e.g., Hon v. Stroh Brewery Co.*, 835 F.2d 510, 512 (3d Cir.1987); *Wilson v. Asten–Hill Mfg. Co.*, 791 F.2d 30, 32 (3d Cir.1986). In its prognostications, this court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceuti-*

*cal Corp.*, 622 F.2d 657, 663 (3d Cir.1980). "Decisions of intermediate appellate courts of the state, while not conclusive, are 'indicia of how the state's highest court might decide' the issue." *McGowan*, 759 F.2d at 291 (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981)). These decisions merit "significant weight," and may constitute presumptive evidence of state law. *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 274 (3d Cir.1985); *see also, e.g., Hon*, 835 F.2d at 512; *McGowan*, 759 F.2d at 291.

Two decisions of the Superior Court of Pennsylvania are relevant here. In the first, *Hudak v. Georgy*, 390 Pa.Super. 14, 567 A.2d 1095 (1989), the court was faced with allegations that medical malpractice caused the death of three sixteen-week-old fetuses. On a challenge by the defendants, the court held that the Wrongful Death and Survival Acts do not create a cause of action for the death of non-viable fetuses. 567 A.2d at 1098. In so doing, the court held that *Amadio* addressed only whether a cause of action could be brought for the death of a viable fetus. 567 A.2d at 1097–98.

The second, *Coveleski v. Bubnis*, 571 A.2d 433 (Pa.Super.1990), is equally apposite. There, the fetus that died was, like "Infant Akl," only eight weeks old. The mother brought a wrongful death action against the driver of the automobile in which she rode at the time of the accident that caused the fetal death. For the majority of the panel, Judge Wieand read *Amadio* to create a cause of action only for the death of viable fetuses. 571 A.2d at 435. The majority observed that "[b]efore viability, any determination of damages for the death of the fetus would be entirely speculative." *Id.* Noting that only two jurisdictions allowed wrongful death suits for the death of non-viable fetuses, the panel aligned itself with the panel in *Hudak* and the great majority of other jurisdictions.

571 A.2d at 435–36. The dissent read *Amadio* to create a broad-gauged wrongful death cause of action. 571 A.2d at 436–37 (Olszewski, J., dissenting).

These decisions clearly weigh in favor of the defendants. Although the probative value of *Coveleski* is somewhat undercut by the dissent, the *Hudak* and *Coveleski* decisions together support this court's reading of *Amadio* as leaving the question presented here unresolved. Furthermore, the *Hudak* and *Coveleski* courts both held that there was no cause of action under the Wrongful Death and Survival Acts for the death of a non-viable fetus. Consequently, the best evidence of Pennsylvania law on this issue supports the defendants.[3]

A look at other courts yields the same result. Most jurisdictions recognize a cause of action on behalf of a fetus that suffers an injury *in utero*. *Coveleski*, 571 A.2d at 435 n. 3 (collecting cases). *Contra, e.g., Justus v. Atchison*, 19 Cal.3d 564, 579, 139 Cal.Rptr. 97, 107, 565 P.2d 122, 132 (1977); *Endresz v. Friedberg*, 24 N.Y.2d 478, 483, 301 N.Y.S.2d 65, 68–69, 248 N.E.2d 901, 905 (1969). Of those that do, most have linked a cause of action to fetal viability or to live birth, though they generally have not explicitly faced the question presented here. *See, e.g., Wolfe v. Isbell*, 291 Ala. 327, 330–31, 280 So.2d 758, 761–63 (1973) (live birth); *Summerfield v. Superior Court*, 144 Ariz. 467, 479, 698 P.2d 712, 722 (1985) (viability); *Group Health Ass'n v. Blumenthal*, 295 Md. 104, 117–19, 453 A.2d 1198, 1206–07 (1983) (live birth); *Farley v. Mount Marty Hosp. Ass'n*, 387 N.W.2d 42, 44 (S.D.1986) (viability).

Most courts that have faced this question have answered it in the negative. *See, e.g., Estate of Baby Foy v. Morningstar Beach Resort, Inc.*, 635 F.Supp. 741, 744–45 (D.V. I.1986) (no cause of action); *Mace v. Jung*, 210 F.Supp. 706, 708 (D. Alaska 1962) (same); *Green v. Smith*, 71 Ill.2d 501, 504, 17 Ill.Dec. 847, 377 N.E.2d 37, 39 (1978)

---

3. This court notes that *Kang v. Ferry*, 20 Phila. 201 (C.P.1990), held that whether viability was essential was an "open question." 20 Phila. at 207. However, little weight can be given this opinion. First, it comes from a state trial court, and thus lacks the authority of the Superior Court decisions cited above. Second, though *Kang* followed *Hudak*, it did not refer to *Hudak;* thus, its value is severely compromised.

(same); *Humes v. Clinton*, 792 P.2d 1032 (Kan.1990) (same); *Fryover v. Forbes*, 433 Mich. 877, 877, 446 N.W.2d 292, 292 (1989) (same); *Wallace v. Wallace*, 120 N.H. 675, 679, 421 A.2d 134, 137 (1980) (same); *West v. McCoy*, 233 S.C. 369, 375–76, 105 S.E.2d 88, 90–91 (1958) (same). Only three courts have held in favor of a cause of action for the death of a non-viable fetus. *Porter v. Lassiter*, 91 Ga.App. 712, 715, 87 S.E.2d 100, 102 (1955) (line drawn at quickening); *Rambo v. Lawson*, — S.W.2d — (Mo.Ct. App.1990) (no line drawn); *Presley v. Newport Hosp.*, 117 R.I. 177, 188–89, 365 A.2d 748, 753–54 (1976) (same).[4] The great weight of authority thus favors the defendants. Since the Pennsylvania courts attach some importance to the views of other jurisdictions, the canvassing above supports this court's prediction that the Pennsylvania Supreme Court would deny a cause of action for the death of a non-viable fetus. *Amadio*, 509 Pa. at 203 & n. 3, 501 A.2d at 1086–87 & n. 3 (relying in part on holdings of courts of other jurisdictions).

The best evidence available to this court compels it to conclude that the Pennsylvania Supreme Court, faced with this issue, would declare that no cause of action for the wrongful death of a non-viable fetus exists. Particularly in an area as fraught with dissension as this, courts—especially a federal court—should hesitate to intrude where the legislature has not spoken. The defendants' motion shall therefore be granted.

4. The *Porter* standard would not help the Akls. Quickening, which occurs with the first recognizable movements of the fetus, usually appears from the sixteenth to the eighteenth week of pregnancy. *Dorland's Illustrated Medical Dictionary* 1401 (27th ed. 1988).