Eileen **MICCOLIS**, p.p.a. Jane Doe Miccolis (a viable fetus who died intestate, in ventre sa mere)

v.

**AMICA MUTUAL INSURANCE COMPANY et al.**

**No. 89–408–Appeal.**

Supreme Court of Rhode Island.

March 1, 1991.

---

Richard A. Ciccone, Ciccone & Coughlin Law Associates, Inc., Providence, for plaintiff.

Paul V. Reynolds, Boyer, Reynolds & DeMarco, David Whitman, Michele Lataille, Hanson, Curran & Parks, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the plaintiff's appeal from partial summary judgment entered in the Superior Court on behalf of the three defendants. We affirm. The facts of the case insofar as they are pertinent to this appeal are as follows.

On August 7, 1985, plaintiff Eileen Miccolis was a passenger in a motor vehicle owned and operated by defendant Raymond C. Ruggieri that collided with another vehicle operated by defendant James J. Kiley. As a result of this accident plaintiff filed a complaint in Providence County Superior Court on August 2, 1988, against defendant AMICA Mutual Insurance Company (AMICA) (based upon the uninsured/underinsured provisions of her own insurance policy) in addition to defendants Ruggieri and Kiley, for their alleged negligence in causing the collision. In addition to claiming damages for her own personal injuries, in count 2 of her complaint plaintiff sought damages for the wrongful death of her five-week old fetus.

Relying upon the complaint, the answers to interrogatories, and the affidavit of Dr. Donald Ross Coustan, defendant AMICA filed a motion for summary judgment on count 2 of plaintiff's complaint. The defendants Ruggieri and Kiley filed similar motions.

Although plaintiff admitted that conception had occurred approximately five weeks prior to the accident, her complaint alleged the wrongful death of a "viable fetus." Doctor Coustan, who is the director of the Division of Maternal–Fetal Medicine at Women and Infants Hospital of Rhode Island, refuted the contention that a fetus is viable at five weeks. In his affidavit, he stated that "any fetus which has a gestational age of less than 20 weeks or which has a fetal weight of less than 500 grams is non-viable, that is, it does not have a reasonable potential for subsequent survival if it were to be removed from the uterus." Doctor Coustan based his opinion upon statutory rules, his education and experience, and reliable and reputable texts such as *Williams Obstetrics* (17th ed.1985), which defines viability as identifying "a reasonable potential for subsequent survival if the fetus were to be removed from the uterus." Doctor Coustan indicates that even if plaintiff was pregnant, at five weeks gestation the fetus was not viable and did not have the potential for subsequent survival outside the uterus. Although Dr. Coustan attributed the positive pregnancy test to a blighted ovum (a fertilized ovum in which development has become arrested) rather than a pregnancy with a healthy fetus, we are required to view the facts in the light most favorable to the plaintiff when considering a defendant's motion for summary judgment and we shall therefore assume, without deciding, that plaintiff was five weeks pregnant at the time of the accident for purposes of this opinion.

Summary judgment was entered in favor of all three defendants in respect to count 2 at a hearing held on June 13, 1989. After examining the record and the testimony of plaintiff, the trial justice determined that the fetus was not viable and that in light of *Presley v. Newport Hospital*, 117 R.I. 177, 365 A.2d 748 (1976), there could be no recovery on a wrongful-death claim. The plaintiff filed this appeal on June 23, 1989.

The sole question to be decided on this appeal is whether a nonviable five-week-old fetus is a "person" for purposes of our wrongful-death statute. Rhode Island's wrongful-death statute, G.L.1956 (1985 Reenactment) § 10–7–1, provides in pertinent part:

> "Liability for damages for causing death.—Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured."

■ The plaintiff maintains that the term "person" as used in the act should be expanded to include a nonviable fetus. She argues that viability is not a relevant consideration in the context of the wrongful-death statute. This contention is based in part upon plaintiff's belief that *Sylvia v. Gobeille*, 101 R.I. 76, 220 A.2d 222 (1966), which eliminates viability requirements for children who are injured prenatally but are subsequently born alive, must also eliminate viability considerations for injuries that result in fetal death. Plaintiff argues that it would be "logically inconsistent" to disregard viability in one situation and not in the other. We disagree.

*Sylvia*, constituted a departure from a general rule enunciated by our court in *Gorman v. Budlong*, 23 R.I. 169, 49 A. 704, 55 A.L.R. 118 (1901). In that case we followed an opinion written by Justice Holmes for the Massachusetts Supreme Judicial Court in *Dietrich v. Inhabitants of Northhampton*, 138 Mass. 14 (1884). The holding in *Gorman* and *Dietrich* was to the effect that regardless of the viability of the fetus, or whether the fetus was born alive, a negligence action may not be maintained on its behalf, nor may the next-of-kin maintain a wrongful death action for prenatal injuries.

■ In *Sylvia*, we specifically overruled *Gorman* to the extent that it stood for the principle that there may be no recovery for prenatal injuries, even though the child is born alive. In *Sylvia*, a child who was injured in utero prior to viability was subsequently born alive, bearing the personal injuries that resulted from defendant's negligence in failing to prescribe a particular drug. This court was not called upon to decide if and when a fetus qualified as a "person," entitled to legal rights and privileges, since there was a child born alive, albeit injured, who was bringing the action through her father and next friend. Rather we were called upon to determine the role of viability at the time of the injuries. We decided that a child born alive has a right to bring suit against one who has negligently inflicted prenatal injuries, regardless of the child's viability when the injuries were sustained. Our primary reason for that ruling was to "protect a child's right to commence life unhampered and unimpaired by damage negligently caused to his body or mind by another." *Sylvia v. Gobeille*, 101 R.I. at 78, 220 A.2d at 223. Once the child is born alive, an injury inflicted prior to viability is no less actionable than one sustained after viability. *Id.* See *Kalafut v. Gruver*, 239 Va. 278, 389 S.E.2d 681 (1990) and *Labree v. Major*, 111 R.I. 657, 306 A.2d 808 (1973) (citing both Rhode Island and Massachusetts law in respect to a child born alive).

In the present case the injured fetus was not subsequently born alive. Therefore, if the line between nonliability and liability for prenatal injuries is drawn at birth as it was in *Sylvia* and *Kalafut,* there is no claim upon which relief could be granted. We now turn to the question of where the line between nonliability and liability should be drawn.

The plaintiff argues that birth and viability are equally arbitrary lines for courts to use in deciding whether to allow recovery for the wrongful death of a fetus. She maintains that liability should attach from and after conception. This is a proposition for which there is virtually no supporting authority. The jurisdiction most closely approaching this point of view is Georgia, but

even that jurisdiction has not embraced the position advocated by plaintiff.

Although it does not assign liability from the time of conception, Georgia is the only state that does not require viability as a condition precedent to a right of action in cases in which the fetus dies in utero. In *Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100 (1955), the court recognized the right of a "quick" child (capable of movement within the womb) to maintain a wrongful-death action, even if not viable. Our holding in *Presley* has also been cited for the contention that viability is irrelevant when a fetus dies in utero. However, the *Presley* case dealt with a full-term viable fetus who was born dead. The sole issue presented to that court was whether a full-term viable fetus who died just prior to the time of birth, as a result of negligently induced labor, could qualify as a "person" under the Rhode Island Wrongful Death Act. The significance of viability was not presented by the facts of that case. The philosophic analysis engaged in by the plurality was merely dictum, however scholarly and comprehensive may have been the terms in which it was presented. The complaint specifically alleged that the fetus was viable at the time of injury and the evidence overwhelmingly supported this allegation. The court's apparent rejection of viability as a criterion was based upon an attempt to square its holding with that of *Sylvia v. Gobeille, supra.* Such an effort was unnecessary, since the holding in *Sylvia* was based upon the fact that the child was born alive. Consequently the issue of viability in *Sylvia* was deemed to be irrelevant.

The plurality in *Presley* conceded that with the exception of Georgia, the courts almost without exception have specified that to recover under the wrongful-death statutes, a fetus shall have been viable at the time the injury was inflicted. This remains the overwhelming majority rule today. *See Annot.*, 84 A.L.R. 3d 411 (1978); *e.g., Chrisafogeorgis v. Brandenberg,* 55 Ill. 2d 368, 304 N.E.2d 88 (1973); *Humes v. Clinton,* 246 Kan. 590, 792 P.2d 1032 (1990); *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985).

*Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), allows a state to proscribe abortions after the fetus attains viability because of the state's compelling interest in protecting fetal life after that stage of development. Our own Legislature only requires a "fetal death certificate" for a fetus that has attained at least twenty weeks' gestation. G.L.1956 (1989 Reenactment) § 23–3–17.

To the body of citations referred to above, we add or highlight a few recent cases that have dealt with the death of a nonviable fetus.

The Missouri Supreme Court decided that a nonviable fetus was not a "person" within the meaning of its wrongful-death statute. *Rambo v. Lawson,* 799 S.W.2d 62 (Mo.1990). The court reasoned that the uncertainty of whether a pregnancy will culminate in a live birth is greatest at the beginning of a pregnancy and additionally pointed out that the mother has her own cause of action for negligently inflicted injury, which may include the intangible damage resulting from her failed pregnancy.

Kansas also denied a nonviable fetus the right to maintain a wrongful-death action in *Humes.* The court in *Humes* recognized that a viable fetus is capable of independent existence and is rightfully recognized as a separate entity capable of maintaining its own cause of action. *Humes,* 246 Kan. at 595, 792 P. 2d at 1036. The court goes on to say that "viability is not an illogical condition precedent when a negligently injured fetus is stillborn. A nonviable fetus is not capable of living outside its mother's womb; it cannot maintain a separate and distinct existence. Thus, a nonviable fetus which dies before birth has never become an independent living person." *Id.* at 596, 792 P.2d at 1037.

Relying heavily on *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985) (right of action exists for stillborn children who were prenatally injured while viable), the court in *Coveleski v. Bubnis,* 391 Pa.Super. 409, 571 A.2d 433 (1990), denied the right of recovery to a nonviable fetus. The court maintained that:

"Where the wrongful death and survival statutes are not explicit regarding the rights of an unborn child, it is sound statutory interpretation to limit the right to assert such an action to a viable fetus. Before viability, any determination of damages for death of the fetus would be entirely speculative. Whether the child would be born healthy and talented would be incapable of prediction with reasonable certainty." *Id.* at 413–14, 571 A.2d at 435.

Adoption of the rule advocated by plaintiff would give rise to actions based upon speculation and conditions wherein predictability would be virtually nonexistent. We agree with the Pennsylvania court that such a rule would be undesirable and exceedingly difficult in implementation.

To summarize, we note that the overwhelming majority view in this country is that a nonviable fetus has no right to bring an action for wrongful death. The language of the plurality opinion of *Presley* to the contrary is merely dictum and has no precedential value in respect to the instant case. We do not believe that the Legislature intended a nonviable fetus to be defined as a "person" within the meaning of the wrongful-death statute. G.L.1956 (1985 Reenactment) § 10–7–1.

For the reasons stated, the plaintiff's appeal is denied and dismissed. The partial summary judgment appealed from is affirmed, and the papers in the case may be remanded to the Superior Court for further proceedings.