CHRISTOPHER N. THIBERT, administrator,[1] vs. WILLIAM
MILKA.

Bristol. December 6, 1994. - March 13, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Wrongful Death. Negligence*, Wrongful death. *Actionable Tort. Death.*

There is no cause of action under the wrongful death statute for the death
of a fetus that was not viable at the time of injury and was not born
alive. [695-697]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 25, 1989.

The case was heard by *Richard J. Chin*, J., on a motion
for summary judgment.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Lori Caron Silveira* for the plaintiff.

*Carol A. Griffin* for the defendant.

ABRAMS, J. At issue is whether a cause of action exists
under the wrongful death statute, G. L. c. 229, § 2 (1992
ed.), on behalf of a nonviable fetus that is not born alive. On
March 9, 1989, a backhoe slid off a truck operated by the
defendant, William Milka,[2] and collided with an automobile
driven by the plaintiff's wife, in which the plaintiff, Christo-
pher N. Thibert, was a passenger. The plaintiff suffered in-
juries, and his wife, and her unborn baby, Baby Girl Thibert,
were killed. Baby Girl Thibert had a gestational age of six-

---

[1]Of the estate of Baby Girl Thibert.

[2]Doing business as Reliable Excavating Company.

teen weeks, was not viable,[3] and had never lived apart from her mother.. The plaintiff is the administrator of her estate.

The plaintiff commenced this action in Superior Court, seeking damages for the wrongful death of Baby Girl Thibert.[4] The defendant moved for summary judgment on the ground that there is no cause of action under the wrongful death statute for the death of an unborn child of sixteen weeks' gestation. The Superior Court judge reported the case to the Appeals Court. The Appeals Court discharged the report on the ground that the case had been improperly reported, and remanded the case for further proceedings. 34 Mass. App. Ct. 1120 (1993). The Superior Court judge allowed the defendant's motion for summary judgment. The plaintiff appealed and we granted his application for direct appellate review.

The wrongful death statute, G. L. c. 229, § 2 (1992 ed.),[5] provides, in relevant part, that "[a] person who (1) by his negligence causes the death of a person . . . under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted . . . shall be liable in damages . . . ." In *Dietrich* v. *Northampton*, 138 Mass. 14 (1884), we said that the wrongful death statute did not allow recovery for the death of a fetus. *Angelini* v. *OMD Corp.*, 410 Mass. 653, 658 (1991), citing *Dietrich*, *supra* at 17. This remained the law in the Commonwealth until *Keyes* v. *Construction Serv., Inc.*, 340 Mass. 633 (1960). In that case, recovery was permitted under the wrongful death statute for a fetus that was viable at the time of injury and born alive. *Id.* at 637. In *Torigian* v. *Watertown News Co.*, 352 Mass. 446, 448 (1967), the cause of ac-

---

[3] A fetus is viable when it is "so far formed and developed that if then born it would be capable of living." *Torigian* v. *Watertown News Co.*, 352 Mass. 446, 448 (1967), citing *Keyes* v. *Construction Serv., Inc.*, 340 Mass. 633, 637 (1960).

[4] He also sought damages for his own personal injuries and for the wrongful death of his wife. The parties settled these claims.

[5] This section has been amended since the time of the accident. The relevant language was not changed.

tion was held to include recovery for the death of a fetus that was not viable at the time of the injury, but was born alive. In *Leccese* v. *McDonough*, 361 Mass. 64, 67 (1972), we held that there could be no recovery for the death of a stillborn child, even if viable at the time of injury. In *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. 354, 361 (1975), the court concluded that there could be recovery for a stillborn if the fetus was viable at the time of injury.

Thus, there is a cause of action for the wrongful death of a child when the child is born alive, regardless of viability, and when the fetus is viable at the time of injury, even if not born alive. The plaintiff asks that we extend a cause of action for wrongful death for a stillborn that was not viable at the time of injury.[6] We decline to do so.

The purpose of the wrongful death statute is to compensate a decedent's survivors for the loss of the decedent's life. *Miga* v. *Holyoke*, 398 Mass. 343, 352 n.10 (1986). The statute allows recovery if the decedent had, or was capable of having an independent life. There is recovery for the death of a fetus that was viable at the time of injury because it could have survived and lived apart from its mother. See *Mone*, *supra* at 355. Because the fetus could maintain a separate existence, it is entitled to a separate cause of action. See *Wallace* v. *Wallace*, 120 N.H. 675 (1980). There is recovery where a child is born alive, regardless of viability at the time of injury, because a "live person was presently suffering from the injuries." *Wallace*, *supra* at 676. The child maintained a

---

[6]The plaintiff argues that we have twice suggested that there is such a cause of action. In *Commonwealth* v. *Cass*, 392 Mass. 799, 807 n.8 (1984), we cited, in dictum, the dissent in *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. 354, 366 (1975) (Braucher, J., dissenting), that, in a civil case, "nonviability of a fetus should not bar recovery." That case is inapposite because the child was viable at the time of injury; we explicitly stated that we did not address the issue of a nonviable fetus. *Cass, supra*. In *Payton* v. *Abbott Labs.*, 386 Mass. 540, 563 (1982), quoting Restatement (Second) of Torts § 869 comment d (1979), we said that, "[i]f the tortious conduct and the legal causation of the harm can be satisfactorily established, there may be recovery for any injury at any time after conception." That case is inapposite: it was not concerned with the wrongful death statute; the injured children were born alive and lived into adulthood.

separate existence. See *Torigian, supra* at 449. Where a non-viable fetus is stillborn, however, the fetus could not have had an independent existence. *Humes* v. *Clinton,* 246 Kan. 590, 596 (1990). There is therefore no separate cause of action for its death.[7] See *id.* at 595, and cases cited.

We therefore hold that there is no cause of action under the wrongful death statute for the death of a child who was not viable at the time of injury and was not born alive.[8] Any expansion of liability is properly left to the Legislature. See *Coveleski* v. *Bubnis,* 535 Pa. 166, 170 (1993); *Humes, supra* at 596. As the Supreme Court of New Hampshire said, "[i]f life is not to become intolerable, there must be some bounda-

---

[7]The plaintiff argues that denying him a right of action would resurrect the live birth rule, under which a cause of action is conditioned on the child's live birth. In *Mone, supra* at 360-361, we rejected this rule for viable fetuses, concluding that live birth was an artificial, unreasonable, and unjust demarcation. Our holding today does not resurrect the live birth rule for viable fetuses, where the fact that the child was viable warrants a cause of action. In the case of a nonviable fetus, however, it is proper to distinguish between those that were born alive and those that were not because it is the very fact of a live birth that gives the child an independent existence and therefore a separate cause of action.

[8]The majority of courts that have addressed the issue have reached the same conclusion. See *Coveleski* v. *Bubnis,* 535 Pa. 166, 169-170 (1993), and cases cited; *Miccolis* v. *Amica Mut. Ins. Co.,* 587 A.2d 67, 71 (R.I. 1991); *Estate of Baby Foy* v. *Morningstar Beach Resort, Inc.,* 635 F. Supp. 741, 743-744 (D. V.I. 1986), and cases cited. See also *Wade* v. *United States,* 745 F. Supp. 1573 (D. Haw. 1990); *Akl* v. *Listwa,* 741 F. Supp. 555 (E.D. Pa. 1990); *Mace* v. *Jung,* 210 F. Supp. 706 (D. Alaska 1962); *Gentry* v. *Gilmore,* 613 So. 2d 1241 (Ala. 1993); *Egan* v. *Smith,* 87 Ohio App. 3d 763 (1993); *Guyer* v. *Hugo Publishing Co.,* 830 P.2d 1393 (Okla. Ct. App. 1992); *Humes* v. *Clinton,* 246 Kan. 590 (1990); *Rambo* v. *Lawson,* 799 S.W.2d 62 (Mo. 1990); *Fryover* v. *Forbes,* 433 Mich. 878 (1989); *Wallace* v. *Wallace,* 120 N.H. 675 (1980); *Green* v. *Smith,* 71 Ill. 2d 501 (1978); *West* v. *McCoy,* 233 S.C. 369 (1958). The only exception is Georgia. See *Coveleski, supra* at 169-170; *Miccolis, supra* at 70. Georgia conditions recovery on quickening, the point where the child can move in the womb, not viability. See *Porter* v. *Lassiter,* 91 Ga. App. 712, 716 (1955). See also *Shirley* v. *Bacon,* 154 Ga. App. 203, 204 (1980) (while quickening usually occurs in fourth month, whether fetus was quick is an issue of fact to be determined on a case by case basis). We have not been able to find any case holding that there can be recovery for stillbirth resulting from injuries prior to viability or, in Georgia, quickening.

Thibert *v.* Milka.

ries to the zone of liability. . . . In our opinion, it is not reasonable to extend liability to a nonviable [stillborn] fetus."
*Wallace, supra* at 677.

*Judgment affirmed.*