663 A.2d 1264

Peter T. KANDEL, Personal Representative
for the Estate of Baby Child Scott

v.

Terrill WHITE.

No. 127, Sept. Term, 1994.

Court of Appeals of Maryland.

Aug. 24, 1995.

Peter T. Kandel (Nelson R. Kandel, Kandel & Associates, P.A., on brief), Baltimore, for appellant.

Timothy S. Barkley, the American Center for Law and Justice, Simpsonville, amicus curiae.

Eugene Connor, Jr. (Harcourt Fulton & Associates, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

We are called upon in this case to determine whether a cause of action may be maintained for survival and wrongful death resulting from the negligent infliction of prenatal injuries causing the death of a nonviable stillborn fetus. For the

reasons discussed below, we hold that a cause of action for wrongful death may not be maintained on behalf of a nonviable fetus who is stillborn.

I.

This appeal arises out of a tort action filed in the Circuit Court for Baltimore City by Peter T. Kandel, as Personal Representative for the Estates of Cheryl Scott and "Baby Child Scott," and Jean Hayes against the Mayor and City Council of Baltimore and Terrill White.[1] The plaintiffs in the tort action sought damages for survival and wrongful death arising out of an automobile accident which resulted in the deaths of Cheryl Scott and Baby Child Scott.

On May 2, 1993, Cheryl Scott (Scott) was a passenger in a vehicle being driven by Terrill White (White). White was driving his vehicle eastbound on Mulberry Street near its intersection with Cathedral Street in Baltimore City. At the same time, an ambulance owned and operated by the Mayor and City Council of Baltimore was travelling southbound on Cathedral Street near its intersection with Mulberry Street. As both vehicles entered the Mulberry Street and Cathedral Street intersection, they collided. As a result of this collision, Scott suffered serious bodily injuries. At the time of the accident, Scott was approximately eight weeks pregnant with Baby Child Scott. Among the injuries suffered by Scott as a result of the accident was an incomplete abortion of the fetus. The day following the accident, a dilatation and curettage was performed to terminate Scott's pregnancy. On May 22, 1993, Scott died due to complications from her injuries.

The plaintiffs filed a complaint for survival and wrongful death in the Circuit Court for Baltimore City on behalf of Scott and her unborn fetus, Baby Child Scott. White filed a motion to dismiss all claims alleged against him for the wrongful death of Baby Child Scott arguing that no cause of

---

1. Neither Jean Hayes nor The Mayor and City Council of Baltimore are parties to this appeal.

action may be maintained on behalf of a nonviable stillborn fetus. Judge Ellen M. Heller granted White's motion to dismiss. The plaintiffs then filed a proposed order requesting that final judgment be entered dismissing with prejudice all claims brought on behalf of Baby Child Scott. Judge Clifton J. Gordy, Jr. of the circuit court refused to enter a final judgment dismissing all claims brought on behalf of Baby Child Scott pending final judgment as to all parties in the case.

The plaintiffs later forwarded a proposed order to Judge Joseph H.H. Kaplan of the circuit court stating that the case had settled and requesting that the judge sign the proposed Order. Judge Kaplan signed the order entering a final judgment dismissing the action with prejudice. The order was filed with the circuit court on June 30, 1994. That same day, appellant appealed this case to the Court of Special Appeals. Prior to the intermediate appellate court's consideration of this case, we issued a writ of certiorari to consider whether a cause of action can be maintained for the death of a nonviable stillborn fetus. We note that the parties to this appeal do not dispute the fact that Baby Child Scott was a nonviable stillborn fetus.

## II.

We first addressed the right of recovery for prenatal injuries in *Damasiewicz v. Gorsuch,* 197 Md. 417, 79 A.2d 550 (1951). In *Damasiewicz,* we held that a child who was injured while *en ventre sa mere* and born alive with permanent injuries, had a right to recover for its injuries. 197 Md. at 441, 79 A.2d at 561. Subsequently, in *State v. Sherman,* 234 Md. 179, 198 A.2d 71 (1964), we considered whether a cause of action could be maintained on behalf of a viable fetus who was stillborn. In *Sherman,* the mother of a viable child suffered serious bodily injury as a result of an automobile accident. The child, who was a viable fetus in the ninth month of development, was delivered stillborn shortly after the accident. We held that a cause of action could be maintained on

behalf of the viable fetus to recover for its prenatal injuries. *Sherman,* 234 Md. at 185, 198 A.2d at 73.

Later, in *Group Health Ass'n v. Blumenthal,* 295 Md. 104, 453 A.2d 1198 (1983), we considered whether a cause of action may be maintained on behalf of a nonviable fetus who was born alive. In that case, Ms. Blumenthal suffered from an incompetent cervix requiring surgical closure during pregnancy to prevent the premature expulsion of the fetus. When Ms. Blumenthal was approximately four and one-half months pregnant, she allegedly asked her obstetrician about this surgical procedure and was told that it was unnecessary at that time. She also claimed that she informed her doctor that she was planning an automobile trip from Maryland to Tennessee and was told that the road trip would not be harmful to her condition. While in Tennessee, Ms. Blumenthal gave birth to a child who died about two and one-half hours after delivery. The child was approximately nineteen to twenty weeks gestation and was not viable. We held that regardless of viability, "a cause of action lies for the wrongful death of a child *born alive* who dies as a result of injuries sustained while *en ventre sa mere.*" *Blumenthal,* 295 Md. at 119, 453 A.2d at 1207 (emphasis added).

Thus, we have held that a cause of action lies for prenatal injuries to a viable child who is either stillborn or born alive and to a nonviable child who is born alive. In the instant case we are asked to consider whether a cause of action lies for prenatal injuries to a nonviable fetus who is stillborn. Although appellant argues that permitting a cause of action for a nonviable stillborn fetus is simply a logical extension of our previous holdings, we disagree and decline to extend a cause of action to a nonviable stillborn fetus.

Appellant argues that when we permitted a cause of action on behalf of a nonviable fetus in *Blumenthal,* we "erased the distinction" between viable and nonviable fetuses for purposes of a wrongful death cause of action and thus, there is no justification for refusing to permit a cause of action for the wrongful death of the nonviable fetus in the instant case

simply because the fetus was stillborn. Contrary to appellant's argument, however, *Blumenthal* in no way erased the distinction between viable and nonviable fetuses for purposes of permitting a cause of action for the wrongful death of a fetus. In determining whether a cause of action existed for a child who was born alive before reaching the point of viability, we noted in *Blumenthal* that "the concept of viability has no role in a case, such as this, where the child is born alive." 295 Md. at 116, 453 A.2d at 1206. Thus, *Blumenthal* did not permit a cause of action for prenatal injuries based on the child's viability status but rather permitted a cause of action solely because the child was born alive.

As we noted in *Blumenthal* in rejecting the viability distinction when a child is born alive:

> " 'To say now that a child will be recognized as alive and capable of inheriting, and later taking possession of property when born alive, but not recognized as alive for the purpose of sustaining injuries for which suit might be brought if they wrongfully cause its death is an incongruous result.' "

295 Md. at 118, 453 A.2d at 1206 (quoting *Wolfe v. Isbell*, 291 Ala. 327, 280 So.2d 758, 764 (1973)); *see also Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032, 1036 (1990) (noting "that viability—the ability to live independently of the mother—is an irrelevant demarcation when a child survives prenatal injuries and is born [alive] with damages suffered within the womb").

 In the case of a child born alive, viability is irrelevant because the cause of action is not on behalf of an unborn fetus, but is rather brought on behalf of an independent living person with a separate legal existence who suffered injuries. *See Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134, 135 (1980). *See also Humes*, 792 P.2d at 1037 (noting that "viability is an improper condition precedent to recovery when the injured fetus is born alive ... [but] viability is not an illogical condition precedent when a negligently injured fetus is stillborn" because it "has never become an independent living

person") (citation omitted); *Thibert v. Milka*, 419 Mass. 693, 646 N.E.2d 1025, 1027 n. 7 (1995) (noting that in the case of a nonviable fetus "it is proper to distinguish between those that were born alive and those that were not because it is the very fact of a live birth that gives the child an independent existence and therefore a separate cause of action"). Thus, although a cause of action may be maintained on behalf of a nonviable fetus who is born alive, our cases have consistently held that viability is a condition precedent to maintaining a cause of action on behalf of a *stillborn* fetus.

Appellant also contends that the circuit court based the refusal to permit a cause of action in the instant case, in part, on the erroneous reason that "to recognize ... a cause of action [for the wrongful death of a nonviable stillborn fetus] could give rise to an 'inherent conflict' by giving a mother the right to terminate a pregnancy yet holding that an action could be brought on behalf of the same fetus under a wrongful death act." Appellant argues that no "inherent conflict" would be created by permitting a cause of action for wrongful death on behalf of a nonviable stillborn fetus while at the same time recognizing a woman's choice to terminate her pregnancy during the first trimester. Appellant argues that because a woman's choice to end her pregnancy during the first trimester is protected under the United States Constitution, *see Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), a woman choosing to terminate her pregnancy during the first trimester would not be liable for wrongful death of the fetus. On the other hand, appellant argues that no such right has been created for tortious injuries inflicted by third parties causing the death of a fetus. Thus, appellant contends that no inherent conflict arises in permitting a cause of action on behalf of a nonviable stillborn fetus even though a woman may terminate her pregnancy during that same stage in the fetus's development.

We note that other jurisdictions have recognized this "inherent conflict" in refusing to extend a cause of action to a nonviable stillborn fetus. For example, in *Toth v. Goree*, 65 Mich.App. 296, 237 N.W.2d 297 (1975), the court noted that

"[i]f the mother can intentionally terminate the pregnancy at three months, without regard to the rights of the fetus, it becomes increasingly difficult to justify holding a third person liable to the fetus for unknowingly and unintentionally, but negligently, causing the pregnancy to end at that same stage." 237 N.W.2d at 301. *See also Wallace,* 421 A.2d at 137 (noting that "it would be incongruous for a mother to have a federal constitutional right to deliberately destroy a nonviable fetus, and at the same time for a third person to be subject to liability to the fetus for his unintended but merely negligent acts") (citation omitted). We have recognized the potential for conflict in permitting a cause of action on behalf of a nonviable stillborn fetus but noted that "this 'inherent conflict' could not arise in Maryland" under our decision in *Sherman, supra,* where we held that a wrongful death action could be maintained on behalf of a stillborn fetus *only* if the fetus was viable at the time of death. *See Blumenthal,* 295 Md. at 119 n. 8, 453 A.2d at 1207 n. 8.

By refusing to recognize a cause of action in the instant case, we join the majority of jurisdictions which have held that no cause of action for wrongful death may be maintained on behalf of a nonviable stillborn fetus. In a case factually similar to the instant case, the Pennsylvania Supreme Court refused to extend a cause of action to an eight-week old nonviable fetus who was aborted as the result of an automobile accident. *See Coveleski v. Bubnis,* 535 Pa. 166, 634 A.2d 608 (1993). The court initially remarked that "[c]urrently, there is no jurisdiction that provides a cause of action for the death of an eight week old fetus that is not born alive, absent express legislative direction." *Coveleski,* 634 A.2d at 609. The court continued by noting that "[i]n fact, every other jurisdiction that has faced this issue has rejected an action for wrongful death for the demise of a fetus prior to viability." *Id.* The court recognized that Pennsylvania had already extended the right to maintain a cause of action to a viable fetus who was stillborn and to a child who is born alive regardless of viability. *Id.* (citing *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1986)). Nevertheless, the court refused to place Pennsylva-

nia "by itself" in extending a cause of action for the wrongful death of a nonviable fetus who is not born alive. *Coveleski*, 634 A.2d at 609.

In a more recent case, the Supreme Judicial Court of Massachusetts reached the same result and held that no cause of action exists for the wrongful death of a nonviable fetus who is stillborn. *See Thibert, supra.* In that case, the plaintiff and his wife, who was sixteen weeks pregnant, were involved in an automobile accident. As a result of the accident, both plaintiff's wife and his unborn child were killed. Plaintiff filed suit seeking damages for the wrongful death of his unborn child. The court initially noted that a cause of action for the wrongful death of a fetus may be maintained "when the child is born alive, regardless of viability, and when the fetus is viable at the time of injury, even if not born alive." *Thibert*, 646 N.E.2d at 1026. Those wrongful death causes of action are permitted, the *Thibert* court explained, because "the decedent had, or was capable of having, an independent life." *Id.* In the case of a viable fetus, the court noted, there is a cause of action because the fetus is capable of maintaining a separate existence. *Id.* (citing *Wallace*, 421 A.2d at 136). Similarly, in the case of a child who is born alive, regardless of viability, there is a cause of action because the injuries were suffered by a live person who maintained a separate independent existence. *Thibert*, 646 N.E.2d at 1026–27 (quoting *Wallace*, 421 A.2d at 135). The court concluded that because the stillborn nonviable fetus could not and did not maintain a separate and independent existence from its mother, no separate cause of action for its death could be maintained. *Thibert*, 646 N.E.2d at 1027.

Other jurisdictions have also refused to extend a cause of action for wrongful death on behalf of a nonviable fetus delivered stillborn following an automobile accident. *See, e.g., Estate of Baby Foy v. Morningstar Beach Resort*, 635 F.Supp. 741 (D.V.I.1986); *Mace v. Jung*, 210 F.Supp. 706 (D.Alaska 1962); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67 (R.I. 1991); *Wallace v. Wallace, supra; Toth v. Goree, supra.* Courts have reached the same result where the death of a

nonviable stillborn fetus was caused by medical malpractice. *See, e.g., Gentry v. Gilmore*, 613 So.2d 1241 (Ala.1993); *Humes v. Clinton, supra. See generally* Sheldon R. Shapiro, Annotation, *Right to Maintain Action or to Recover Damages for Death of Unborn Child*, 84 A.L.R.3d 411, 454–57 (1978 & Supp. July 1994) (citing cases which hold that no cause of action may be maintained on behalf of a nonviable stillborn fetus).

One jurisdiction does permit recovery on behalf of a nonviable stillborn fetus.[2] In *Connor v. Monkem Co., Inc.*, 898 S.W.2d 89 (Mo.1995), the Missouri Supreme Court determined that a cause of action may be maintained for the wrongful death of a nonviable stillborn fetus. In reaching its conclusion, the court relied on a newly enacted Missouri statute which stated that " '[t]he life of each human being begins at conception.' " *See Connor*, 898 S.W.2d at 91 n. 6 (quoting Mo.Rev.Stat. § 1.205 (1994)). The court concluded that because the legislature had expressed in the statute that "parents and children have legally protectable interests in the life of a child from conception onward," that legislative pronouncement must be recognized to permit a cause of action for a stillborn nonviable fetus despite the "obvious difficulties associated with [that] type of claim." *Connor*, 898 S.W.2d at 93. Because the *Connor* court relied on the express legislative direction that life begins at conception in holding that a cause of action may be maintained on behalf of a nonviable stillborn fetus, and there is no such legislative direction in Maryland, the Missouri court's decision in *Connor* cannot be used to support a decision to permit a cause of action for the death of Baby Child Scott in the instant case.

---

**2.** We note that Georgia permits a cause of action to be maintained on behalf of a stillborn fetus who may not have reached the point of viability so long as the fetus is "quick," i.e. capable of movement inside the womb. *See Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100 (1955).

Appellant also cites *Danos v. St. Pierre*, 402 So.2d 633 (La.1981) as permitting a cause of action for a nonviable stillborn fetus. That case, however, involved a cause of action on behalf of a viable fetus in the sixth month of gestation.

Appellant argues that refusing to extend a cause of action on behalf of a nonviable stillborn fetus while extending causes of action to viable stillborn fetuses and nonviable fetuses who are born alive is an arbitrary distinction which should not be permitted. Regarding the arbitrariness of this distinction, in *Coveleski, supra,* the court recognized that although a "line has been drawn at viability, the pressure to avoid all possible arbitrary results is again brought to bear." 634 A.2d at 610. Nevertheless, the court chose to "maintain the line drawn by our precedent, and defer to our legislature for any expansion of liability." *Id.* Additionally, as the court in *Wallace, supra,* stated in refusing to extend a cause of action to a nonviable aborted fetus, "there must be some boundaries to the zone of liability ... [and] [i]n our opinion, it is not reasonable to extend liability to a nonviable fetus." 421 A.2d at 136. We agree there must be a boundary to the zone of liability and reaffirm our conclusion in *Sherman, supra,* that "the weight of present authority draws the line at least at a point where the common law concept of viability is in effect." 234 Md. at 185, 198 A.2d at 73. Thus, we decline to go beyond that zone of liability and recognize a cause of action to a nonviable stillborn fetus absent express legislative direction to do so.

█ Finally, appellant argues that a holding by this Court that no cause of action for a nonviable stillborn fetus would be a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This argument is without merit. The Supreme Court has held that an unborn fetus is not a "person" as used in the Fourteenth Amendment. *Roe v. Wade,* 410 U.S. at 158, 93 S.Ct. at 729, 35 L.Ed.2d at 180. Given that a fetus is not considered a "person" for purposes of Fourteenth Amendment protection, appellant's argument that prohibiting a cause of action on behalf of a nonviable stillborn fetus would violate the Fourteenth Amendment is unfounded.

In conclusion, we agree with the sentiments expressed by the New Hampshire Supreme Court in refusing to permit a cause of action on behalf of a nonviable stillborn fetus:

"The real question is not when life begins but rather, whether our death statute should be construed to allow a cause of action on behalf of a fetus that has not drawn a breath of air, seen the light of day, or possessed the capacity to survive in the world outside its mother, despite all the medical and other care that could be mustered for it. To deny a nonviable [stillborn] fetus a cause of action is . . . simply a policy determination that the law will not extend civil liability by giving a nonviable fetus a cause of action for negligence before it becomes a person, in the real and usual sense of the word, by being born alive. . . ."

*Wallace,* 421 A.2d at 136–37.

### III.

Appellee also argues that because this case was voluntarily dismissed with prejudice by the circuit court, this appeal is not permitted and should be dismissed by this Court. Although based on our decision in this case it is unnecessary to reach this issue, we note that this appeal is properly before this Court. In the circuit court, Judge Heller dismissed Counts VI and VIII of the amended complaint based on her decision that no cause of action may be maintained on behalf of Baby Child Scott. To obtain a final judgment in order to appeal the issue, appellant filed a motion for entry of a final judgment with respect to Baby Child Scott. *See* Maryland Rule 2–602. The court, however, refused to enter a final judgment at that time because other claims were still pending.

Three months later, following agreements among the parties settling the remaining claims, Judge Kaplan entered an Order which provided that "a final judgment in the matter be entered with respect to Baby Child Scott." That order did not constitute a settlement of the claims with regard to Baby Child Scott, but rather docketed final judgment in order for appellant to appeal this issue. Thus, the appeal in the instant case was proper.

## IV.

For the reasons discussed above, we align ourselves with the majority of jurisdictions and hold that no cause of action for wrongful death may be maintained on behalf of a nonviable stillborn fetus. We are not willing to eliminate the viability and nonviability distinction as to the availability of a cause of action for wrongful death when a fetus is stillborn. Any extension of liability to permit a cause of action on behalf of a nonviable stillborn fetus must be left to the legislature.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*