905 P.2d 194

**Cynthia MILLER, individually and as the personal representative of the Estate of Justin Dale Miller, deceased, Plaintiff–Appellant,**

v.

**Robert KIRK, Defendant–Appellee.**

No. 22938.

Supreme Court of New Mexico.

Oct. 17, 1995.

The Branch Law Firm, Margaret Moses Branch, Felicia C. Weingartner, Daniel R. Swiss, Albuquerque, for Appellant.

Guebert & Yeomans, P.C., Terry R. Guebert, Don Bruckner, Albuquerque, for Appellee.

Butt, Thornton & Baehr, P.C., Emily A. Franke, Albuquerque, for Amicus Curiae NM Defense Lawyers Association.

## OPINION

FRANCHINI, Justice.

1. This case is before us on certification from the Court of Appeals pursuant to NMSA 1978, Section 34–5–14(C)(2) (Repl. Pamp.1990) (providing for certification from Court of Appeals to Supreme Court matters that involve "substantial public interest"). We address the scope of liability under the New Mexico Wrongful Death Act, NMSA 1978, §§ 41–2–1 to –4 (Repl.Pamp.1989) (hereafter "the Wrongful Death Act" or "the Act"); specifically, whether New Mexico recognizes an independent cause of action for the wrongful death of a nonviable fetus. Because we hold that the Wrongful Death Act does not recognize that claim, we do not address the second issue regarding the availability of hedonic damages.

2. This case involves an action brought by Appellant Cynthia Miller for the alleged wrongful death of her 18 to 22 week-old fetus. Appellant filed a complaint against Appellee Robert Kirk, alleging claims for personal injury and wrongful death arising out of an automobile accident. The personal injury claims were settled, including the inju-

ries to the mother and her son Jimmy, a passenger in the car. The only remaining claim is for the wrongful death action brought on behalf of the fetus. The trial court granted summary judgment in favor of Appellee concluding that no independent cause of action exists for the wrongful death of a nonviable fetus. The trial court also granted Appellee partial summary judgment on the issue of hedonic damages. Appellant appeals from these rulings.

■ 3. In reviewing a summary judgment, this Court must consider what the applicable law is and whether genuine issues of material fact exist that preclude summary judgment under the law. *See* SCRA 1986, 1–056 (Repl.Pamp.1992); *Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 340, 871 P.2d 1343, 1346 (1994). In this case, the following facts are undisputed.

4. On August 6, 1991, Appellant was injured in an automobile accident when her car collided with another car driven by Appellee. At the time of the accident, Appellant was 18 to 22 weeks pregnant with a male fetus. As a result of the accident, Appellant sustained blunt trauma injuries to the abdomen and was taken to the emergency room. Upon examination of Appellant, the emergency room doctors diagnosed the separation of the placenta from the uterus wall. An emergency Caesarean section was performed with the delivery of an approximately 18 to 22 week-old fetus with cardiac activity, i.e. a heartbeat. The fetus died within minutes of birth. The doctor who performed the Caesarean testified that she could not recall whether there were any other signs of life and she did not attempt to resuscitate the nonviable fetus due to its extreme immaturity.

■ 5. Under the Wrongful Death Act an action for damages may be maintained for a wrongful act or omission that results in death if the decedent might have maintained that the personal representative of a "person" killed by the wrongful act or omission of another may maintain an action for damages resulting from such action if the decedent might have maintained the action had he or she lived. Section 41–2–3. Thus, our ultimate inquiry is whether a nonviable fetus is a "person" within the meaning of the Act.

6. We first addressed the scope of liability under the wrongful death statute for the death of an unborn fetus in *Salazar v. St. Vincent Hosp.*, 95 N.M. 150, 619 P.2d 826 (Ct.App.), *writ. quashed*, 94 N.M. 806, 617 P.2d 1321 (1980). Following a detailed analysis of legislative intent, *Salazar* held that New Mexico recognized an independent cause of action for the wrongful death of a *viable* fetus, separate and apart from the personal injury cause of action of the mother. *Id.* at 154, 619 P.2d at 830. Allowing a wrongful death action for the death of a viable fetus, however, does not create a cause of action for the death of a nonviable fetus. On this issue, we find no clear legislative directive.

7. Viability is defined as "[t]hat stage of fetal development when the life of the unborn child may be continued indefinitely outside the womb by natural or artificial life-supportive systems." *Black's Law Dictionary* 1565 (6th ed. 1990). Thus, a fetus is nonviable if it is incapable of sustaining life outside the mother's womb.

8. In the instant case, all parties agree that the fetus was nonviable at the time of the collision and injury. Appellant argues, however, that the applicable test for the right of recovery under the wrongful death statute should not be based on the standard of viability. In fact, Appellant maintains that the issue of viability is simply irrelevant where the fetus is "born alive".

9. This case does not require this Court "to make any moral, philosophical, or theological determinations of what constitutes a person or a life". *Wade v. United States*, 745 F.Supp. 1573, 1577 (D.Haw.1990). The only issue before this Court is whether to extend the scope of liability under the Wrongful Death Act to a nonviable fetus. In the absence of a clear legislative directive, "the problem is one of social policy: where to draw the line against otherwise unlimited liability." *Solon v. WEK Drilling Co., Inc.*, 113 N.M. 566, 569, 829 P.2d 645, 648 (1992) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 43, at 287 (5th ed. 1984)).

10. Historically, determining the legal status of an unborn fetus has been troublesome. At common law, courts did not recognize a right of action for prenatal personal injuries. *Salazar*, 95 N.M. at 151, 619 P.2d at 827. In 1884 Justice Holmes, writing for the Supreme Judicial Court of Massachusetts, held that a child *en ventre sa mere* had no jurisdictional existence; that is, the unborn fetus could not maintain a separate action because it was so intimately united to its mother. *Dietrich v. Inhabitants of Northampton*, 138 Mass. 14 (1884). *Dietrich* remained the rule until 1946 when a United States District Court permitted recovery for a viable child who was prenatally injured, born alive, and lived. *Bonbrest v. Kotz*, 65 F.Supp. 138 (D.D.C.1946). The *Bonbrest* court reasoned that a viable child can live outside its mother and therefore cannot be considered part of her. *Id.* at 140. After *Bonbrest* was decided, courts rapidly departed from the rule articulated in *Dietrich*. Keeton, et al., *supra* § 55, at 368. Currently, every jurisdiction allows a right of recovery for prenatal injuries provided the child survives. *Id.*

11. Today the vast majority of states, including New Mexico, *Salazar*, 95 N.M. at 154, 619 P.2d at 830, now permit an action for wrongful death of a viable fetus who dies as a result of prenatal injuries, even when the fetus is stillborn. *See generally* Sheldon R. Shapiro, Annotation, *Right to Maintain Action or to Recover Damages for Death of Unborn Child*, 84 A.L.R.3d 411 (1978 & Supp.1995). Applying a viability standard, the majority of jurisdictions have declined to extend the right to recovery in such action to a nonviable fetus. *Id.* These courts have held that to recover under the wrongful death statutes, the fetus must have been viable at the time of the injury. *See, e.g., Wade*, 745 F.Supp. at 1579; *Gentry v. Gilmore*, 613 So.2d 1241, 1244 (Ala.1993); *Lollar v. Tankersley*, 613 So.2d 1249, 1252–53 (Ala. 1993); *Chrisafogeorgis v. Brandenberg*, 55 Ill.2d 368, 304 N.E.2d 88, 90–91 (1973); *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032 (1990); *Carr v. Wittingen*, 182 Mich. App. 275, 451 N.W.2d 584, 586 (1990), *rev'd on other grounds*, 435 Mich. 856, 456 N.W.2d 713 (1993); *Rambo v. Lawson*, 799 S.W.2d 62 (Mo.1990); *Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134, 136–37 (1980); *Guyer v. Hugo Publishing Co.*, 830 P.2d 1393, 1394 (Okla.Ct. App.1991), *cert. denied*, (Okla.1992); *Coveleski v. Bubnis*, 535 Pa. 166, 634 A.2d 608, 609–10 (1993); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67 (R.I.1991); *see also* 84 A.L.R.3d 411, 453 § 5[b]. Of all the jurisdictions that have addressed this matter, only Georgia has rejected the viability rule, deciding instead to allow a parent to maintain an action for the wrongful death of a fetus that was "quick," that is, "able to move in its mother's womb." *Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100, 103 (1955).

12. Applying the viability rule, courts have also declined to allow a claim for the wrongful death of a nonviable fetus where the fetus is born alive but dies soon after birth. *Ferguson v. District of Columbia*, 629 A.2d 15 (D.C.1993) (holding no cause of action for nonviable fetus even if born alive); *Brown v. Green*, 781 F.Supp. 36, 38 (D.D.C. 1991) (same); *Lollar*, 613 So.2d 1249, 1252–53 (Ala.1993) (same). *But see, Group Health Ass'n Inc. v. Blumenthal*, 295 Md. 104, 453 A.2d 1198, 1206–07 (1983) (holding nonviable fetus born alive may maintain a wrongful death action); *Hudak v. Georgy*, 535 Pa. 152, 634 A.2d 600, 602–03 (1993) (same).

13. Courts denying the right of recovery to a nonviable fetus have based their holdings on several different grounds. A number of courts advance the *Bonbrest* rationale to support their position; that is, only a viable fetus is capable of an independent existence, and therefore it should be regarded as a separate entity capable of maintaining an action in its own right. *E.g., Humes*, 792 P.2d at 1037 (holding that nonviable fetus cannot sustain a separate independent existence); *Estate of Baby Foy v. Morningstar Beach Resort Inc.*, 635 F.Supp. 741, 743 (D.V.I.1986) (same); *Mace v. Jung*, 210 F.Supp. 706, 708 (D.Alaska 1962) (same). Other courts that have refused to allow recovery emphasize the uncertainty and unpredictability surrounding the maintenance of a wrongful death action for a nonviable fetus. *Rambo*, 799 S.W.2d at 63 (denying recovery for nonviable fetus because greatest uncertainty exists at the beginning of pregnancy); *Coveleski v. Bubnis*, 391 Pa.Super.

409, 571 A.2d 433, 435 (1990) (refusing to extend liability for the death of a nonviable fetus because damages are too speculative); *Miccolis,* 587 A.2d at 71 (refusing to extend the right of recovery to a nonviable fetus because it would "give rise to actions based upon speculation and conditions wherein predictability would be virtually nonexistent").

■ 14. In the past twenty years following *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the concept of viability in defining fetal rights has gained importance. *Gentry,* 613 So.2d at 1244. The weight of authority supports the adoption of the viability standard as the most logical approach toward determining the rights of a fetus. *Wade v. United States,* 745 F.Supp. at 1579 (characterizing majority holding limiting recovery to a viable fetus who could have sustained life outside the womb as more logical and thoughtful). A nonviable fetus is incapable of living outside its mother's womb and cannot be regarded as a separate entity capable of maintaining an independent action in its own right. Additionally, limiting the right to assert such action to a viable fetus avoids actions based entirely on speculation and uncertainty. Moreover, where our wrongful death statute does not explicitly address the rights of the unborn child, we consider it sound statutory interpretation to limit the right to maintain an action to a viable fetus. *Lollar,* 613 So.2d at 1252–53 (explaining court's reluctance to allow cause of action for nonviable fetus absent clearer expression of legislative intent). We, therefore, agree with the reasoning of a majority of jurisdictions, and hold that no cause of action exists for the wrongful death of a nonviable fetus. An independent wrongful death action for the death of a fetus requires a showing of viability at the time of injury.

15. Appellant argues that viability is irrelevant in the instant case because the nonviable fetus emerged with a heartbeat, which it maintained for a number of minutes before death. This Court's adoption of viability as a condition precedent to recovery for fetal injuries necessarily forecloses the argument that live birth alone should define fetal rights. *See Ferguson,* 629 A.2d at 16–17 (holding viability rather that live birth of nonviable fetus constitutes the dividing line); *Brown,* 781 F.Supp. at 38 (holding that fetus could not recover for injuries sustained before viability where nonviable fetus died within minutes of birth). We cannot agree with Appellant's assertion that the live birth of a nonviable fetus somehow renders the question of viability irrelevant. One reason for defining fetal rights by use of the "viability" standard instead of the "live birth" standard is to reduce the likelihood that those rights are created or extinguished by chance or happenstance. *Ferguson,* 629 A.2d at 17 (explaining that the existence of rights should not depend on the happenstance of whether death occurred before or after birth).

16. Additionally, we cannot reconcile the assertion of a wrongful death action of a nonviable fetus with the concept of a survival action. In New Mexico, the Wrongful Death Act has been characterized as a survival statute. *Solon,* 113 N.M. at 568, 829 P.2d at 647. Recognizing a right of recovery for the death of a nonviable fetus under our wrongful death survival statutes would result in the dilemma described in *Ferguson:*

> Where the fetus emerges from the mother without the developmental capacity to survive, it would contradict the theory of a survival action to provide a cause of action to the representative of the fetus. Absent clear indication of contrary legislative intent, it would be anomalous to view an action as one that could have been brought by the fetus had the fetus not died when the fetus never developed the capacity to survive in the first place.

629 A.2d at 17.

17. Viability is the medical definition of the ability to survive outside the mother's womb. *See Roe,* 410 U.S. at 160, 93 S.Ct. at 730. Therefore, it is the logical rule to determine the existence of a cause of action pursuant to our wrongful death survival statutes.

18. For these reasons, we hold that the term "person" in Section 41–2–1 does not include a nonviable fetus. The trial court's grant of summary judgment is affirmed.

19. IT IS SO ORDERED.

BACA, C.J., and RANSOM, J., concur.