Jodene M. SANTANA and Michael Santana, wife and husband, Plaintiffs–Appellants,

v.

ZILOG, INC., a California corporation, Defendant–Appellee.

No. 95–35436.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1996.

Decided Sept. 4, 1996.

David R. Lombardi, Givens, Pursley & Huntley, Boise, ID, for plaintiffs-appellants.

Stephen R. Thomas, Moffatt, Thomas, Barrett, Rock & Fields, Boise, ID, for defendant-appellee.

Before WRIGHT, HALL, and TROTT, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Jodene and Michael Santana sued Zilog, Inc., Jodene's employer, claiming that Jodene was exposed to dangerous chemicals on the job that caused her to miscarry six times from 1988 to 1993. They asserted wrongful death claims in Idaho state court for the deaths of their unborn fetuses, allegedly due to Zilog's negligence, failure to warn, and battery. Zilog, a California corporation, removed the case to federal court. The district court granted Zilog's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, concluding that under Idaho law no cause of action exists for wrongful death of a nonviable fetus. The Santanas filed a timely appeal. The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

**I**

In August 1988 Jodene Santana began working at Zilog's Nampa, Idaho facility in the computer chip fabrication area, known as "the Fab." At the time she started her job at Zilog, Mrs. Santana was the mother of three children, and she and her husband planned to have a fourth child. Between August 1988 and March 1993, while employed by Zilog, Mrs. Santana conceived six

times, but all of these pregnancies ended in miscarriage. Just before she became pregnant a seventh time, Zilog permitted Mrs. Santana to work outside the Fab, at the written request of her doctor.[1] This child, the Santana's fourth, was born in December 1993, without complications.

The longest of the six terminated pregnancies lasted seventeen weeks, which is not a long enough period of gestation for any of the fetuses to have been viable.[2] The parties agree that the fetuses were not viable at the time of death.

The Santanas allege that while she worked in the Fab, Mrs. Santana was exposed to dangerous chemicals, which Zilog knew, or should have known, could adversely affect her reproductive health and the health of her fetuses. In their complaint, they assert wrongful death claims for the six miscarried fetuses, based on causes of action for negligence, failure to warn, and battery. Zilog submitted two Fed.R.Civ.P. 12(b)(6) motions to dismiss claiming that Idaho recognizes no cause of action for nonviable fetuses, and alternatively, that Idaho's Worker's Compensation scheme preempts any wrongful death claim in this case. The district court granted the first motion and denied the second motion as moot. *Santana v. Zilog, Inc.,* 878 F.Supp. 1373, 1382 (D.Idaho 1995). The Santanas appealed the ruling on the first motion. After hearing oral argument in this case, we issued an order requesting the Idaho Supreme Court to certify this issue for review, and that request was denied.

## II

A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a ruling on a question of law that is reviewed de novo. *Stone v. Travelers Corp.,* 58 F.3d 434, 436–37 (9th Cir.

**1.** In their complaint, appellants note that Mrs. Santana was granted leaves of absence from her job, upon her physician's request, soon after she became pregnant the third, fourth, and fifth times, but she still miscarried. ER Tab 1, Exhibit A to Notice of Removal.

**2.** Courts have placed viability at about week 23 to 24 of gestation. *See, e.g., Webster v. Reproductive Health Services,* 492 U.S. 490, 554, 109 S.Ct. 3040, 3076, 106 L.Ed.2d 410 (1989). However,

1995). Our review is limited to the contents of the complaint, and all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *National Wildlife Federation v. Espy,* 45 F.3d 1337, 1340 (9th Cir.1995). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995).

The only question on appeal is whether Idaho's wrongful death statute, Idaho Code § 5–311, supports a cause of action for the six nonviable fetuses Mrs. Santana miscarried while working at Zilog. We hold that it does not.

Idaho's wrongful death statute provides:

When the death of a *person* is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured.

Idaho Code § 5–311 (emphasis added). The Idaho Supreme Court has held that the term "person" in this statute includes a fetus that has developed to the stage of viability, which means that it has the ability to survive outside the mother's womb. *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11, 15 (1982). However, the court expressly reserved the question of whether the wrongful death statute encompasses liability for the death of a nonviable fetus. *Id.* Although the *Volk* court rejected live birth as the beginning of legal personhood, it did not clearly delineate

whether a fetus can survive on its own is a factual determination that is based on the development of the particular fetus, as well as the length of gestation. *Wade v. United States,* 745 F.Supp. 1573, 1580 (D.Haw.1990). Medical advances continue to push the point of viability to earlier stages in fetal development. *See generally Wallace v. Wallace,* 120 N.H. 675, 421 A.2d 134, 139 (1980).

where that line should fall instead. Thus, the Idaho courts have not yet resolved at what point a fetus becomes a person for purposes of Idaho's wrongful death statute. Furthermore, the Idaho legislature has provided no guidance on this issue either; there is no statute on point, and the legislature has not offered any clear statement of its intent regarding application of the wrongful death statute to fetuses.

■ In the absence of state supreme court precedent, federal courts exercising diversity jurisdiction may look to "other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority" to determine how the state court would resolve the issue. *Burns v. International Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir.1991).

### A

Although most states allow tort recovery for prenatal injury to children eventually born alive, they are split upon whether to permit recovery for wrongful death of a fetus in utero. Still, the vast majority of states allows recovery if the fetus has reached the stage of viability. *See Farley v. Sartin*, 195 W.Va. 671, 466 S.E.2d 522, 528 n. 13 (1995) (providing a comprehensive list of the thirty-seven jurisdictions that recognize a wrongful death cause of action for viable fetuses).

By contrast, of those jurisdictions that have considered whether their wrongful death statutes similarly permit recovery for death of a *nonviable* fetus, all but a few have refused to recognize such a cause of action.[3] *Miller v. Kirk*, 120 N.M. 654, 905 P.2d 194 (1995); *Thibert v. Milka*, 419 Mass. 693, 646 N.E.2d 1025 (1995); *Kandel v. White*, 339 Md. 432, 663 A.2d 1264 (1995); *Gentry v. Gilmore*, 613 So.2d 1241 (Ala.1993); *Coveleski v. Bubnis*, 535 Pa. 166, 634 A.2d 608 (1993); *Ferguson v. District of Columbia*, 629 A.2d 15 (D.C.1993); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67 (R.I.1991); *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032 (1990); *Wade v. United States*, 745

F.Supp. 1573 (D.Haw.1990) (interpreting Hawaii's wrongful death statute under the Federal Tort Claims Act); *Fryover v. Forbes*, 433 Mich. 878, 446 N.W.2d 292 (1989); *Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134 (1980); *Mace v. Jung*, 210 F.Supp. 706 (D.Alaska 1962) (interpreting Alaska's wrongful death statute); *West v. McCoy*, 233 S.C. 369, 105 S.E.2d 88 (1958); *Egan v. Smith*, 87 Ohio App.3d 763, 622 N.E.2d 1191 (1993); *Guyer v. Hugo Pub. Co.*, 830 P.2d 1393 (Okla.Ct.App.1991). Only six states, Georgia, Louisiana, Illinois, Missouri, West Virginia, and South Dakota, have extended tort liability to encompass the wrongful death of a nonviable fetus. Of these states, all but West Virginia have acted pursuant to express legislative direction.

The cases expressing the majority view cite a variety of rationales for drawing the line at viability. Many courts use viability as a condition precedent for recovery because until that point the fetus is not capable of sustaining an independent, separate existence from its mother. *See, e.g., Humes*, 792 P.2d at 1037 ("A nonviable fetus is not a distinct entity; rather, its life is an integral part of its mother's life."). Wrongful death actions are defined by statute in all states, and most of these cases require interpreting whether the term "person" as used in the statute includes nonviable fetuses. Courts use viability as the dividing line for "personhood" because it denotes the point at which the fetus, in essence, becomes a person, or a "separate entity capable of maintaining an independent action in its own right." *Miller*, 905 P.2d at 197; *Thibert*, 646 N.E.2d at 1026; *Coveleski*, 634 A.2d at 610; *Humes*, 792 P.2d at 1037; *Miccolis*, 587 A.2d at 70; *Kandel*, 663 A.2d at 1267; *Wade*, 745 F.Supp. at 1579 ("allowing a cause of action for the wrongful death of a viable fetus who could have sustained life outside the womb represents the more logical and thoughtful holding"); *Wallace*, 421 A.2d at 136–37.

Some courts have also pointed out that "the uncertainty of whether a pregnancy will

---

**3.** At the current time, fifteen jurisdictions have rejected a cause of action for nonviable fetuses, even though they have recognized a cause of action for viable fetuses. In addition, nine jurisdictions do not allow wrongful death causes of

action for any fetus, regardless of viability. See *Farley*, 466 S.E.2d at 528 n. 12, and Gary A. Meadows, *Wrongful Death and the Lost Society of the Unborn*, 13 J. Leg. Med. 99, 103 n. 31 (1992), for the complete list of citations.

culminate in a live birth is greatest at the beginning of a pregnancy." *Miccolis,* 587 A.2d at 70; *Miller,* 905 P.2d at 196. Thus, they refuse to allow recovery because of the uncertainty and unpredictability of actions based on speculation that the fetus would have otherwise survived to viability. *See, e.g., Miccolis,* 587 A.2d at 71; *Miller,* 905 P.2d at 197.

Perhaps the most frequent rationale courts give for refusing recovery for nonviable fetuses is that such an expansion of liability is better left to the state's legislature. From their inception, wrongful death statutes expanded tort liability beyond that recognized at common law. W. Page Keeton et al., *Prosser and Keeton on Torts* § 127, at 945 (5th Ed.1984) (noting that under the common law a tort victim's family could not recover if the victim died of his injuries). The later trend extending tort law to include prenatal injuries expanded potential liability even more. But without clear legislative direction, most courts have refused to further extend liability to cover previable fetuses. *E.g., Thibert,* 646 N.E.2d at 1027; *Coveleski,* 634 A.2d at 610; *Wallace,* 421 A.2d at 136–37 ("[L]ife may begin with conception but causes of action do not.").

Courts in five states have recognized this cause of action pursuant to express legislative enactments defining the stage at which fetal rights attach. *See, e.g., Porter v. Lassiter,* 91 Ga.App. 712, 87 S.E.2d 100, 102 (1955) (construing Ga.Code Ann. §§ 26–1102, 26–1103, which allowed parents to recover for the homicide of an unborn child "so far developed as to be ordinarily called 'quick,'" or capable of moving in its mother's womb); *Danos v. St. Pierre,* 402 So.2d 633 639 (La. 1981) (relying upon a legislative pronouncement "that a human being exists from the moment of fertilization and implantation"); *Seef v. Sutkus,* 145 Ill.2d 336, 164 Ill.Dec. 594, 596, 583 N.E.2d 510, 512 (1991) (Miller,

J., concurring) (noting that Ill.Rev.Stat. ch. 70, para. 2.2, which states that "[t]he state of gestation of development of a human being when an injury is caused, ... or at death, shall not foreclose [a cause of action for wrongful death]," eliminated the viability requirement); *Connor v. Monkem Co.,* 898 S.W.2d 89 (Mo.1995) (en banc) (relying on Mo.Rev.Stat. § 1.205, which extended to unborn children "from the moment of conception" all rights enjoyed by other persons); *Wiersma v. Maple Leaf Farms,* 543 N.W.2d 787 (S.D.1996) (interpreting a wrongful death statute, S.D. Codified Laws Ann. § 21–5–1, that authorized a cause of action for "the death or injury of a person, including an unborn child," as applying to nonviable fetuses).

The West Virginia Supreme Court is the only court to recognize a cause of action for a nonviable fetus without action by the state legislature. *See Farley v. Sartin,* 195 W.Va. 671, 466 S.E.2d 522 (1995). This opinion considers the same policy arguments cited by the majority cases, but it reaches a different result.

The court's primary argument is that there is no legitimate reason to distinguish between viable and nonviable fetuses in the wrongful death context. The court suggests that viability is an artificial distinction in this context, that focuses too much on the status of the life that has been wrongfully terminated, and too little on the wrongful conduct that caused the death. *Id.* 466 S.E.2d at 534 (citing *Gentry,* 613 So.2d at 1246 (Maddox, J., dissenting)). Furthermore, the court notes that its holding eliminates the need for trial courts to decide whether a fetus was viable at the time of its death, which is often a difficult factual question. *Id.* Finally, the court points out that policy and precedent supporting the viability distinction in the abortion context have no place in the wrongful death context.[4] *Id.* 466 S.E.2d at 534–35.

---

4. Some courts have suggested that *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and its progeny somehow prevent tort recovery for nonviable fetuses. *See Gentry,* 613 So.2d at 1244 ("During the 20 years since *Roe v. Wade* the viability distinction has gained significance."); *Kandel,* 663 A.2d at 1267–68 (noting a potential conflict with abortion rights but finding

that such a conflict does not arise if the cause of action is limited to viable fetuses); *Wallace,* 421 A.2d at 137. Essentially, they claim that because the mother could have legally aborted the nonviable fetus, then it is incongruous to hold a third person liable for his negligent actions that resulted in the fetus's death. This argument has come under attack recently, and rightly so. *See, e.g.,*

In conclusion, the court invited legislative direction on this issue, but in its absence, chose to extend tort liability on its own. *Id.* 466 S.E.2d at 534.

The majority cases addressed these same issues, but most of them ultimately made a policy decision to leave further extension of tort liability to the legislature. Although the *Farley* opinion is well-reasoned and thoughtful, it does not undermine the equally well-reasoned majority view, but simply adopts an alternate interpretation. It is our task to predict which alternative the Idaho courts would choose when interpreting Idaho's wrongful death statute and its case law regarding fetal rights.

**B**

Upon reviewing Idaho's case law and statutes, we find nothing to suggest that the Idaho courts would be likely to follow the minority view expressed solely by West Virginia. Without more clear direction, we are inclined to follow the majority cases, and to decline the appellants' invitation to judicially extend Idaho's tort law to cover the wrongful death of a nonviable fetus.

Idaho has no statutes similar to those of Georgia, Louisiana, Illinois, Missouri and South Dakota,[5] and the Idaho legislature has not offered any indication of its intent regarding application of the wrongful death statute to fetuses. The Santanas argue that when the legislature amended the wrongful

death statutes in 1984, after the *Volk* decision, the lack of any attempt to limit *Volk*'s holding indicates the legislature's acceptance of recovery for any fetus, viable or not.[6] However, we agree with the district court that it cannot reasonably be argued that legislative silence as to viability somehow endorses the view that legal personhood begins with conception. *Santana,* 878 F.Supp. at 1380. The most that can be said is that the legislature did nothing to overturn the Idaho Supreme Court's holding in *Volk,* and thus, impliedly agreed that the cause of action extends to viable fetuses.

Appellants also point out that the *Volk* court supported its interpretation of the wrongful death statute by noting that the statute serves two policies: "first of which is to provide damages to those parties authorized to bring wrongful death actions, and the second of which is to deter wrongful conduct through the imposition of civil liability." *Volk,* 651 P.2d at 15. The court contended that to deny recovery to the fetus in *Volk* would undermine both of these policies. Moreover, it would create an anomalous result in that the tortfeasor would be liable for injuring a fetus in utero that is subsequently born alive, but would be granted immunity for killing the fetus. Although refusing recovery for a nonviable fetus would also undermine these policies, additional policy arguments support limiting the cause of action to viable fetuses, and there is every reason to

---

*Gentry,* 613 So.2d at 1246–47; *see also People v. Davis,* 7 Cal.4th 797, 30 Cal.Rptr.2d 50, 872 P.2d 591, 597–99 (1994). *Roe* holds that when the state's interest in protecting potential life is balanced against the woman's privacy right to an abortion, the state's interest must give way, at least up until the point of viability. *Roe,* 410 U.S. at 162–64, 93 S.Ct. at 731–32. Thus, *Roe* forbids the state's protection of the fetus's interests only when these interests conflict with the constitutional rights of the mother. "*Roe* is not implicated when, as in this case, both the State and the mother have congruent interests in preserving life and punishing its wrongful destruction." *Gentry,* 613 So.2d at 1247 (Maddox, J., dissenting); *see also Roe,* 410 U.S. at 162, 93 S.Ct. at 731 (noting that the State has an "important and legitimate interest in protecting the potentiality of human life"). In the wrongful death context, *Roe*'s use of viability to denote when the balance of competing interests shifts is simply irrelevant.

**5.** The most analogous statute would be Idaho Code § 32–102, which provides that "[a] child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests, in the event of its subsequent birth." However, the court in *Volk* expressly held that Section 32–102's definition of "person" does not apply to Idaho's wrongful death statute. *Volk,* 651 P.2d at 15.

**6.** Before the amendment, the wrongful death cause of action was defined by two statutes: Idaho Code §§ 5–310 and 5–311. These statutes were amended in 1984, and now only section 5–311 applies to wrongful death. The amendments did not change the cause of action in any way relevant to this appeal. See the district court's opinion for the text of the original statutes, 878 F.Supp. at 1377 n. 3.

believe that Idaho would consider those arguments as well. Of primary concern to us is the fact that the Idaho legislature has not yet addressed this issue. Given that, we expect that the Idaho courts would follow the majority view and leave the proposed extension of liability to the legislature.

 Finally, appellants advance two additional arguments in support of their claim that Idaho law manifests an intent to protect the unborn from the moment of conception. First, appellants claim that because the Idaho Supreme Court recognized a parent's cause of action for wrongful birth, but rejected a child's cause of action for wrongful life,[7] that this affirmed the value of life and expressed the court's intention to expansively protect parental losses with regard to unborn children. *See Blake v. Cruz*, 108 Idaho 253, 257, 260, 698 P.2d 315, 319, 322 (1984). We reject this argument, as did the district court. *Santana*, 878 F.Supp. at 1381. Wrongful birth addresses a completely different set of considerations than does wrongful death, and *Blake* is distinguishable. Generally, wrongful birth imposes liability for breach of a physician's duty of care to ensure that parents can make an informed decision with respect to their right to prevent birth or conception of children. But wrongful death imposes liability for breaches of ordinary negligence duties of care, which is a much more expansive potential for liability. Recognition of the wrongful birth cause of action by itself cannot reasonably be seen to expand tort liability to this extent. Furthermore, wrongful birth is also distinguishable because it unquestionably involves an injury to a "person" because it presupposes the child is born alive.

Second, appellants argue that Idaho's death penalty statute expresses a clear state policy to protect unborn fetuses without regard to viability, because it prohibits execution of a pregnant woman. Idaho Code §§ 19–2713 and 2714. These statutes simply have no bearing on whether a nonviable fetus is a "person" under the wrongful death statute. Even if the state refuses to recognize a nonviable fetus as a "person" in one context, that does not mean that it is a nonentity entitled to no protection under the law. Idaho's death penalty statute merely indicates that the State seeks not to punish the fetus for the crimes of its mother.

In the end, we are left with the task of predicting what Idaho's response to this case would be. The Idaho courts have given no clear indication, but they have followed the majority trend in two cases involving fetal rights. *See Volk*, 651 P.2d at 15 (holding that wrongful death extends to viable fetuses, in part because "[w]e are constrained to agree with the reasoning of what appears to be the majority rule"); *Blake*, 698 P.2d at 319, 321 (noting with approval the majority trends with regard to wrongful birth and wrongful life causes of action). Likewise, the legislature has taken no affirmative steps to limit the court's rulings or to indicate its own intent. In this absence of clear direction, we adopt the majority rule limiting liability to wrongful death of viable fetuses, and therefore, leave any further expansion of Idaho's tort law to the Idaho legislature or courts.

### III

The underlying question in all of these cases is at what point a fetus becomes a "person." This poses an obvious moral and philosophical dilemma that cannot be easily solved with logic. Although viability may be a somewhat arbitrary distinction in the wrongful death context, it does provide a logical point at which to halt further judicial extension of the cause of action. Any further expansion of potential liability seems most properly left to the Idaho legislature, as the majority of cases suggests. We therefore

7. "Wrongful birth is a cause of action in the family of an infant, which imposes liability on a defendant for damages and expenses incurred by the parents of a child born with birth defects when, but for the negligence of the defendant, the child would not have been conceived or carried to term." *Blake*, 698 P.2d at 317. "Wrongful life ... is comprised of 'those causes of action brought by the infant alleging that, due to the negligence of the defendant, birth occurred.'" *Id.* 698 P.2d at 321 (citation omitted). The majority of jurisdictions to consider these causes of action have recognized the wrongful birth cause of action, but rejected wrongful life because it is a repudiation of the value of human life. *See* Keeton, *supra*, § 55, at 371 & n. 44–48.

affirm Chief Magistrate Judge William's order granting Zilog's motion to dismiss.

AFFIRMED.